IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

---

Docket No. 23-3384

---

SHIELA SALEHIAN

Plaintiff - Appellant

vs.

STATE OF NEVADA, NEVADA STATE TREASURER'S OFFICE; ZACH

CONINE, STATE TREASURER

Defendants - Appellees

---

On Appeal From an Order of the

United States District Court

for the District of Nevada

---

BRIEF OF APPELLANT

---

Michael P. Balaban
LAW OFFICES OF MICHAEL P. BALABAN
10726 Del Rudini Street
Las Vegas, Nevada  89141

Attorney for Appellant

# TABLE OF CONTENTS

Page

I.    STATEMENT OF JURISDICTION                                    1

      A.    The Basis for the District Court's Jurisdiction        1

      B.    The Basis for the Court of Appeals Jurisdiction        1

      C.    Filing Date of the Appeal                              1

      D.    Assertion that the Appeal is from a Final Order or
            Judgment that Disposes of All of Shield's Claims       2

II.   ISSUES PRESENTED                                             2

III.  STATEMENT OF CASE                                            2

IV.   STATEMENT OF FACTS                                          3

V.    SUMMARY OF ARGUMENT                                         12

VI.   STANDARD OF REVIEW                                          14

      A.    Legal Standard Applicable to a Motion for
            Summary Judgment                                      14

      B.    Standard of Review for a Motion for Summary Judgment  15

VII.  ARGUMENT                                                    16

      A.    Introduction                                          16

      B.    At a Minimum there is an Issue of Material Fact for Trial
            on Whether Appellees Violated the ADEA by Terminating
            Salehian Because of her Age                           17

            1.    The ADEA Prohibits Discharging an Employee
                  Because of the Employee's age                   17

i

2. The Evidence in this Case, Especially when Looked at in the Light Most Favorable to Salehian, Establishes a Prima Facie Case of Age Discrimination    18

     a. At Least Forty Years Old    19

     b. Qualified for the Position/Performing Job Satisfactorily    19

     c. Discharged    21

     d. Replaced by a Substantially Younger Employee(s) with Equal or Inferior Qualifications    21

3. Appellees have Met their Burden to Rebut Salehian's Prima Facie Cases of Age Discrimination    22

4. An Issue of Material Fact Exists as to Whether Appellees' Reasons for Terminating Salehian are False and a Pretext for them Terminating Salehian Because of her Age    23

5. The District Court Erred in Finding there was Insufficient Evidence of Pretext by *not* Properly Crediting Salehian's Evidence and *not* Making all Reasonable Inferences on the Evidence for Salehian like a Judge is Supposed to do when Deciding a Motion for Summary Judgment    28

C. At a Minimum there is an Issue of Material Fact for Trial as to Whether Appellees are Liable for Creating a Hostile Environment for Salehian Because of her Age in Violation of the ADEA    36

D. At a Minimum there is an Issue of Material Fact for Trial as to Whether Appellees Interfered with Salehian's Rights to take Leave under the Family and Medical Leave Act    40

E.  At a Minimum there is an Issue of Material Fact for
     Trial as to Whether Appellee Met their Duty to
     Reasonably Accommodate Salehian's Disability
     under the ADA Including Providing her a Further
     Leave of Instead of Terminating her                    44

VIII.  CONCLUSION                                             49

# TABLES OF AUTHORITIES
## FEDERAL CASES

<u>Page</u>

*Abuan v. Level 3 Commc'ns, Inc.*, 353 F.3d
1158, 1174 (10th Cir.2003) 31-32

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 248, 249, 252, 255 (1986) 14

*Bachelder v. America West Airlines, Inc.*, 259 F.3d
1112 n.9, 1122, 1130 (9th Cir. 2001) 41, 43

*Bennington v. Caterpillar, Inc.*, 275 F.3d 654, 659 (7th Cir. 2001) 21

*Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326,
331-332 (3rd Cir. 1995) 31

*Burns v. AAF-McQuay, Inc.*, 166 F.3d 292, 294 (4th Cir. 1999) 36

*Catlin v. United States*, 324 U.S. 229, 233 (1945) 2

*Celotex Corp. v. Catrett*, 477 U.S. 317, 321(1986) 14

*Chevron USA, Inc. v. Natural Resources Defense Council, Inc.*,
467 U.S. 837, 843-44 (1984) 41

*Clark County School Dist. v. Breeden*, 532 U.S. 268, 270 (2001) 39

*Coglan v. Am. Seafoods Co.*, 413 F.3d 1090, 1094 (9th Cir. 2005) 19, 22

*Cornwell v. Electra Central Credit Union*, 439 F.3d 1018,
1030-1031 (9th Cir. 2006) 30

*Crawford v. Medina General Hospital*, 96 F.3d 830, 834 (6th Cir. 1996) 36

*Davis v. Team Electric Company*, 520 F.3d 1080, 1096 (9th Cir. 2008) 40

*Diaz v. AT&T*, 752 F.2d 1356, 1363 (9th Cir. 1985) 33

*Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008)  17-18

*EEOC v. Boeing Co.*, 577 F.3d 1044, 1051 (9th Cir. 2009)  31

*EEOC v. Massey Yardley Chrysler Plymouth, Inc.*,
117 F.3d 1244, 1249 (11th Cir. 1997)  36

*EEOC v. McDonnell Douglas Corp.*, 191 F.3d 948, 951 (8th Cir. 1999)  21

*EEOC v. Pape Lift, Inc.*, 115 F.3d 676, 680 (9th Cir. 1997)  29, 35

*EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 805-808 (7th Cir. 2005)  46

*Escriba v. Foster Poultry Farms*, Inc., 743 F.3d 1236, 1243 (9th Cir. 2014)  41-42

*Faragher v. City of Boca Raton*, 524 U.S. 775, 806 (1998)  38-39

*Fitzgerald v. Action, Inc.*, 521 F.3d 867, 876-877 (8th Cir. 2008)  33

*Fjellestad v. Pizza Hut of America, Inc.*, 188 F.3d 944, 955, fn. 5  47

*Gross v. FBL Fin'l Services, Inc.*, 129 S.Ct. 2343, 2349, fn. 2.s  17

*Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)  37-39

*Humphrey v. Memorial Hospitals Association*, 239 F.3d 1128,
1137 (9th Cir. 2001)  46

*Lindsey v. SLT Los Angeles, LLC*, 447 F.3d 1138,
1148-49 (9th Cir. 2006)  22-23

*Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002)  15

*Lowe v. City of Monrovia*, 775 F.2d 998, 1007 (9th Cir. 1985)  22

*McAlindin v. County of San Diego*, 192 F.3d 1226, 1236 (9th Cir. 1999)  48-49

*McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, 357 (1995)  36

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)  17, 23

*McGinest v. GTE Service Corp.*, 360 F.3d 1103,
    1112, 1123 (9th Cir. 2004)                                     18, 25, 29

*Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1246, 1247
    (9th Cir. 1999)                                          15, 21

*O'Connor v. Consolidated Coin Caterers Corp.*,
    517 U.S. 308, 312 (1996)                                    21

*Oncale v. Sundowner Offshore Serv., Inc.*, 523 U.S. 75, 81-82 (1998)      18

*Pejic v. Hughes Helicopters, Inc.*, 840 F.2d 667, 674 (9th Cir. 1988)      17

*Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 619 (7th Cir. 2000)      21

*Ramirez v. Kingman*, 374 F. Supp.3d 832, 852 (D. Ariz. 2019)      28

*Reeves v. Sanderson Plumbing Prods., Inc.*,
    530 U.S. 133, 142 (2000)                                 18-19, 22-24

*Sanders v. City of Newport*, 657 F.3d 772, 778 (9th Cir. 2011)      41

*Sischo-Nownejad v. Merced Community College District*,
    934 F.2d 1104, 1112 (9th Cir. 1991)                           35

*Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1171 (10th Cir. 1999)      47

*Snead v. Metro. Prop. & Cas. Ins. Co.,* 237 F.3d 1080,
    1093-94 (9th Cir. 2001)                                  23

*Steele v. Mattis*, 899 F.3d 943, 949-950 (DC Cir. 2018)      29

*Swinton v. Potomac Corp.*, 270 F.3d 794, 801 (9th Cir. 2001)      39

*Taylor v. Phoenixville School District*, 184 F.3d 296,
    314-315 (3rd Cir. 1999)                                  47

*Texas Department of Community Affairs v. Burdine*,
    450 U.S. 248, 253 (1981)                                  19, 22

*Tolan v. Cotton*, 572 U.S. 650, 651, 655-60,
    134 S.Ct. 1861, 1866 (2014)               14-15, 31-32, 35, 44, 49

*Weil v. Citizens Telecom Servs. Co.*, 922 F.3d 993, 1001 (9th Cir. 2019)    18

*Whittington v. Nordam Group, Inc.*, 429 F.3d 986, 996 (10th Cir. 2005)    21

*Valdez v. Rosenbaum*, 302 F3d 1039, 1043 (9th Cir. 2002)    15

*Velez v. Thermo King de Puerto Rico, Inc.*,
    585 F.3d 441, 449 (1st Cir. 2009)    29

*Voigt v. Savell*, 70 F3d 1552, 1564 (9th Cir. 1995)    15

# FEDERAL STATUTES

*29 CFR* §825.220(a)    41

*29 CFR* §825.220(b)    41

*29 CFR* §825.220(c)    41, 43

*29 CFR* §1630.1 (c)(4)    45

*29 CFR* §1630.2(g)    45

*28 USC* §1291    1

*29 USC* §621, et seq.    1

29 U.S.C. §631(a)    19

*29 U.S.C.* § 2601, et seq.    1

*29 USC* §2615(a)    40

*29 USC* §2615(a)(1)    41

*29 USC* §2654                                             41

*42 U.S.C.* §12101, et seq.                               1

*42 U.S.C.* §12102(2)                                    45

*42 U.S.C.* §12102(2)(B)                                 46

*42 U.S.C.* §12102(4)(A)                               45-46

*42 U.S.C.* §12102(4)(B)                                 45

## FEDERAL RULES OF CIVIL PROCEDURE

Federal Rules of Civil Procedure, Rule 56(c)             14

## EEOC ENFORCEMENT GUIDANCE

EEOC Compliance Manual §902.1                            45

# I.

## STATEMENT OF JURISDICTION

**A.    The Basis for the District Court's Jurisdiction.**

The basis for the district court's jurisdiction is the Age Discrimination in Employment Act of 1967, as amended, *29 USC §621, et seq.* (hereinafter "ADEA"), the Family and Medical Leave Act of 1993, *29 U.S.C. § 2601, et seq.* (hereinafter "FMLA") and the Americans With Disabilities Act of 1990, *42 U.S.C. §12101, et seq.* (hereinafter "ADA").  Jurisdiction is predicated upon these code sections as well as *28 USC*, §1331 as the action involved a federal question.

**B.    The Basis for the Court of Appeals Jurisdiction.**

The basis for the court of appeals jurisdiction is that the district court entered a final decision in the case.  The circuit courts of appeals have jurisdiction over appeals from all final judgments of the district courts. *28 USC*, §1291.

**C.    Filing Date of the Appeal.**

On October 12, 2023 the district court filed its order granting Defendants and Appellees Defendants State of Nevada, Nevada State Treasurer's Office and Zach Connie, State Treasurer ("Appellees" or "Nevada State Treasurer's Office" or "Treasurer Conine") motion for summary judgment. [Excerpt of Record (hereinafter "ER") pgs. 25-49, Docket #47.]  On the same day, October 12, 2023, the clerk of the district court filed its judgment in a civil case entering judgment in favor of Nevada State Treasurer's Office and Treasurer Conine and closed the case. [ER pg. 50, Docket #48.]  On November 4, 2023, Plaintiff and Appellant Salehian ("Appellant" or "Salehian" filed her notice of appeal to the district court's order granting Nevada State Treasurer's Office and Conine's motion for summary judgment. [ER pgs. 158-159, Docket #50.]

**D.      Assertion that the Appeal is from a Final Order or Judgment that Disposes of all of Shields' Claims.**

The district court entered its final judgment that disposed of all of Salehian's claims on October 12, 2023. [ER pg. 50, Docket #48.]   A final judgment that disposes of all a party's claims is an appealable judgment. *Catlin v. United States*, 324 U.S. 229, 233 (1945).

## II.

### ISSUES PRESENTED

1.      Did the district court err in concluding that as a matter of law there is *not* an issue of material fact for a jury to decide as to whether the Appellees terminated Salehian because of her age in violation of the ADEA?

2.      Did the district court err in concluding that as a matter of law there is *not* an issue of material fact for a jury to decide as to whether the Appellees are liable for creating a hostile environment for Salehian because of her age in violation of the ADEA?

3.      Did the district court err in concluding that as a matter of law there is *not* an issue of material fact for a jury to decide as to whether the Appellees wrongly interfered with Salehian right to take leave under the FMLA by not granting her leave under the FMLA and terminating her instead?

4.      Did the district court err in concluding that as a matter of law there is *not* an issue of material fact for a jury to decide as to whether the Appellees did not provide reasonable accommodations to Salehian under the ADA including a leave of absence and instead terminated her employment in violation of the ADA?

## III.

### STATEMENT OF CASE

On August 16, 2022, Salehian filed her second amended complaint for

damages and other relief against Nevada State Treasurer's Office and Conine. [ER pgs. 4-24, Docket #37.]

On September 28, 2022 Appellees filed their motion for summary judgment. [ER pg. 165, Docket #39.]

On October 12, 2023 the district court filed its order granting Nevada State Treasurer's Office and Conine's motion for summary judgment. [ER 25-49, Docket #47.]

Also on October 12, 2023 the clerk of the district court filed its judgment in a civil case entering judgment in favor of Nevada State Treasurer's Office and Conine based on the district court granting Appellees' motion for summary judgment. [ER pg. 50, Docket #48.]

On November 4, 2023 Appellant filed her notice of appeal to the district court's order granting summary judgment and entering judgment for Nevada State Treasurer's Office and Conine [ER pgs. 158-159, Docket #50.]

## IV.

## STATEMENT OF FACTS

Salehian, was hired by Defendant on January 9, 2012 as a Senior Deputy Treasurer. Salehian's last position was Executive Director of the Governor Guinn Millennium Scholarship Program. [ER pg. 52, Salehian Aff. ¶2.]

Salehian was 57 years old (her date of birth is June 2, 1961) when Treasurer Conine took office in January 2019, the second oldest in age (besides Beth Yeatts) of the ten deputy appointees in Nevada State Treasurer's office. [ER pg. 52, Salehian Aff. ¶3.]

Salehian was terminated along with Yeatts on October 28, 2019, without cause, when Treasure Zach Conine told Sheila that the Treasurer's office was "going in a different direction". [ER pg. 52, Salehian Aff. ¶4.]

Salehian earned a Bachelor's degree in business administration and worked

for Citigroup's credit card division from May 1986 through March 2009 prior to working for the Nevada State Treasurer's office. Salehian was responsible for multiple departments within divisions within the credit card division which supported 60 million credit card customers who used systems Sheila supported. Managed multimillion dollar budgets, wrote RFP's, chose vendors and negotiated contracts. Hired, fired and trained staff and mid-level managers on policies, procedures, regulations and laws and designed and deployed new technology for improved auditing controls. Finally volunteered in community supporting financial literacy initiatives for youths. [ER pg. 52, Salehian Aff. ¶5.]

Salehian was more than willing take direction and focus on administration priorities from Treasurer Conine when he took office in 2019. She gave no resistance to the changes Treasurer Conine put in place once he took office. [ER pg. 52, Salehian Aff. ¶6.]

Under Treasurer Conine, Sheila was not only willing to switch direction based on the new Treasurer's priorities, she led many of the initiatives he instructed the office to coordinate and deploy. [ER pg. 52, Salehian Aff. ¶7.]

Salehian never received any negative job performance feedback from Treasurer Conine, Chief of Staff Dickson or anyone else, for the entire ten months Salehian worked for Treasurer Conine. This included never receiving any written or verbal warnings. [ER pg. 53, Salehian Aff. ¶8.]

Further neither Treasurer Conine, Chief of Staff Dickson nor anyone else asked to meet with her to discuss concerns with Sheila's performance or that of her department. In addition, neither Salehian or her department were ever put on any performance improvement plan. Furthermore at various office meetings Treasurer Conine, complimented and thanked Sheila for her work. [ER pg. 53, Salehian Aff. ¶9.]

In addition prior to working for Treasurer Conine, Salehian worked for State

Treasurers Kate Marshall and Dan Schwartz, both of whom gave Salehian positive reviews. [ER pg. 53, Salehian Aff. ¶10, Ex. 1.]

Salehian never had a single complaint or grievance filed against her. [ER pg. 53, Salehian Aff. ¶11.]

When Salehian worked at the State Treasurer's office, she not only focused on programs that were important to the office, she rolled out new programs which became models for other states, such as the School Savings Programs. She was also asked to represent Nevada nationally at statewide 529 college savings conferences and Financial Literacy convening's multiple times. Sheila was extremely knowledgeable, reliable, and esteemed by her staff and others in the 529 Savings/Prepaid and Scholarship industry space. [ER pg. 53, Salehian Aff. ¶12.]

In addition, Salehian regularly presented at the College Savings Board all of the accomplishments that she had led her team to achieve, as late as September 19, 2019, one month before she was terminated. [ER pg. 53, Salehian Aff. ¶13.]

Further Salehian was called upon to testify at the legislative session and wrote the contents for the expansion of The Governor Guinn Memorial Scholarship Program, Senate Bill 414 which was submitted and passed in the 2019 legislative session. [ER pg. 53, Salehian Aff. ¶14.]

Overall Sheila was passionate and devoted many extra hours to promoting Nevada State Treasurer Office programs in the office, in the field and through volunteering in the community. On numerous occasions, organization representatives conveyed praise and gratitude for Salehian's significant contributions to their state run and/or nonprofit college savings and financial literacy programs. [ER pgs. 53-54, Salehian Aff. ¶15.]

Salehian's department goals were shared with Chief of Staff Miles Dickson in July 2019 and neither he, nor Treasurer Conine ever responded to Sheila in writing or verbally. [ER pg. 54, Salehian Aff. ¶16.]

Furthermore, a full three years after Salehian was terminated from the Treasurer's Office the "Strategic Plan" for the Treasurer's Office was still unwritten. Treasurer Conine and Chief of Staff Dickson gathered all Deputies in Carson City for a 3 day Strategic Planning Session and nothing was ever published for any departmental goals. [ER pg. 54, Salehian Aff. ¶17.]

Finally Salehian never exhibited any unprofessional conduct towards co-workers, subordinates, or supervisors. Salehian never "yelled and belittled" staff members. [ER pg. 54, Salehian Aff. ¶18.]

Prior to her termination, Salehian was repeatedly subjected to offensive, humiliating and harassing comments that she felt were directed towards her, her age and her ability to do her job because of her age. [ER pg. 54, Salehian Aff. ¶19.]

Although Salehian did not make a formal written complaint about the harassment during her employment with Nevada State Treasurer's Office, she told her supervisor Yeatts about the harassment on numerous occasions. She also told other employees about the harassment she was experiencing including Cherie McDowell, who was a Management Analyst IV with the State of Nevada and had worked for the State of Nevada for over twenty years. [ER pg. 54, Salehian Aff. ¶20.]

Even if she had made a formal complaint before she was fired, nothing would have been done to remedy the situation because the people doing the harassing, ie. State Treasurer Zach Conine, Chief of Staff Miles Dickson and Chief Deputy Treasurer Tara Hagan were also likely the ones who would investigate Plaintiff's allegations. [ER pg. 54, Salehian Aff. ¶21.]

And even if someone other than these three investigated the allegations, they would know Salehian was the one who made the allegations and Plaintiff feared retaliation from these individuals if she made a formal complaint. [ER pgs. 54-55, Salehian Aff. ¶22.]

First in March of 2019 Chief of Staff Dickson asked Salehian to walk him through the historical programs on Financial Literacy. Salehian put together a comprehensive summary document and met with Dickson and Beth Yeatts on it. In the meeting Dickson asked Salehian how long she had been with the Nevada State Treasurer's office and when she responded seven years, Dickson said "she had been with the state forever" and commented that that was longer than he had ever worked anywhere. This made Salehian feel embarrassed because she felt that Dickson was trying to point out that Sheila had been around so long as a way to belittle her because of her age. [ER pg. 55, Salehian Aff. ¶23.]

Second in April of 2019 at a Deputy meeting with all Deputies present, Chief of Staff Dickson made a statement about how outdated the Nevada State Treasurer's websites that he recently reviewed were and mentioned that "all of the deputies that were Millennials at the table and on video conference would much rather look at and appealing website then talk to a public servant" and that it was probably an "age thing" but that the Nevada State Treasurer's websites and ways of interacting with customers would need to change. Salehian felt very offended by the comment and that it was directed at her. She tried to lighten the conversation by saying, "Well in my mind I am a Millennial" to make it less uncomfortable and to convey to Dickson that she felt singled out by the comment. [ER pg. 55, Salehian Aff. ¶24.]

Shortly after that in April 2019, Chief of Staff Dickson asked to be given an overview of the Governor Guinn Millennium Scholarship Program because he was concerned about the extensive work that was done in the office to reconcile payments made to the Nevada System of Higher Education each semester. [ER pg. 55, Salehian Aff. ¶25.]

The meeting participants included Salehian, Dickson, Sheila's supervisor Yeatts and Evelyn Castro and Plaintiff tried to explain the reason for the audits and

the necessity for them and Dickson made a comment about "how it probably has been 20 years since the policies and procedures were updated". [ER pg. 55, Salehian Aff. ¶26.]

Salehian was offended and explained that they did not have IT support for over a year and a half and that Plaintiff and her staff had made many changes to streamline servicing since she had been in charge of the program and Dickson responded that he could only imagine when the program was installed there was probably "dot matrix printer" and people spending hours reconciling and that Dickson didn't see much difference now. [ER pgs. 55-56, Salehian Aff. ¶27.]

Salehian was extremely offended and humiliated by Chief of Staff Dickson's comments which she felt were directed at her age and her ability to do her job because of her age. [ER pg. 56, Salehian Aff. ¶28.]

Finally in April of 2019 Salehian was invited to represent the State of Nevada Treasurer's Office at an all-expense paid Financial Literacy leadership meeting in Nashville, TN. Salehian asked the nonprofit to reach out to Treasurer Conine to ensure it was ok if she accepts. Treasurer Conine informed the nonprofit that he would rather Chief of Staff Dickson attends. [ER pg. 56, Salehian Aff. ¶29.]

Salehian had to learn of the denial of her attendance by the non-profit partner, in lieu of notification from Treasurer Conine or Chief of Staff Dickson. When Salehian asked about the reasoning for the denial, given her vast experience in financial literacy vs. newly appointed Chief of Staff Dickson's own admission that "he was not a financial literacy expert", her questions went unanswered. [ER pg. 56, Salehian Aff. ¶30.]

In September 2019 Chief of Staff Dickson was making plans for the Treasurer's office to move to the fifth floor. When Salehian asked Dickson about the move, she was told by Dickson that the Nevada State Treasurer's office was moving to a new location to "refresh the office and was interested in fresh faces

and starting with a clean slate." Salehian was offended by Dickson's remark that they were looking for fresh faces and starting a clean slate and took this to mean they wanted younger employees when the office moved. [ER pg. 56, Salehian Aff. ¶31.]

Salehian was also told that she would be getting a smaller office than younger staff/deputies and when she asked why, Dickson told her that there was no debating it and that was how it was going to be. This ran in contravention to a prior planned office move a few years earlier in which offices were going to be assigned based on staff level and seniority according to State of Nevada rules. [ER pg. 56, Salehian Aff. ¶32.]

In addition between February 2019 and October 2019, Salehian experienced a reduction of duties including media outreach responsibilities that were given to younger newly appointed deputies under Treasurer Conine's leadership which Salehian thought was because of her age. [ER pg. 57, Salehian Aff. ¶33.]

Further during this time frame, Salehian was continually asked for information, reports and data, only to be repeatedly told by Chief of Staff Dickson, that he "had not had a chance to review what he had asked for" despite the urgent need for the information which required client to work numerous extra hours to provide. In addition Dickson/Conine's servicing letters had to be reviewed by a much younger appointed employee despite Plaintiff's oversight and seven years of successful experience running the programs and all customer communications. [ER pg. 57, Salehian Aff. ¶34.]

Also Salehian never was allowed to pick up Treasurer Conine and accompany him to public facing meetings or functions, despite the fact that it was a main component of her job for the past 7 years, before Treasurer Conine took office in January 2019. Instead other younger staff, all under 40 years of age, were the only employees allowed to accompany Treasurer Conine to public functions or

Treasurer interviews, even when Salehian sourced and set up the interviews. [ER pg. 57, Salehian Aff. ¶35.]

Finally Tara Hagan assigned staff to review every outgoing long distance phone call Salehian made to make sure the calls were not personal phone calls. When Salehian escalated the disparate treatment to Dickson, he refused to address the issue with Hagan despite the fact *not one* call was ever found to be a personal call made by Salehian. [ER pg. 57, Salehian Aff. ¶36.]

In the fall of 2019 Salehian was seen by Kristen Addis Brown, M.D. at Thomas Dermatology to treat four skin cancer lesions.  In early October 2019 she began a topical chemotherapy treatment drug for the cancer. [ER pg. 59, Salehian Aff. ¶53, Ex. 3.]

On October 8, 2019 in a meeting with Treasurer Conine, Chief of Staff Dickson and Yeatts, Salehian's initial accommodations to work from home were approved.  This became necessary because of the scabbing and pain on her face from the treatment. [ER pg. 59, Salehian Aff. ¶54.]

During this time Salehian continued to update her supervisor Yeatts, Treasurer Conine and Chief of Staff Dickson on her condition and her continued need to work from home as a reasonable accommodation for her disability. [ER pg. 59, Salehian Aff. ¶55.]

On October 17, 2019 Salehian was again treated by Dr. Brown, who filled out FMLA paper work for intermittent FMLA leave or accommodations for continued intermittent treatment that would be administered on an ongoing basis to treat Sheila's condition. [ER pgs. 59-60, Salehian Aff. ¶56, Ex. 4.]

On October 18, 2019 Salehian attended a Deputy Treasurer's meeting from home via telephone with Treasurer Conine, Dickson and Yeatts and other deputies up north.  After Salehian completed her project update, she informed Treasurer Conine and all the other people on the call/meeting that she had completed her first

round of chemotherapy treatments, ie., two weeks of a six week regiment, and thus had four weeks of treatment left. [ER pg. 60, Salehian Aff. ¶57.]

Further on October 22, 2019 Salehian sent an email to Treasurer Conine, Chief of Staff Dickson and Yeatts, thanking them for allowing her to work from home during her current chemotherapy treatment and informing them that Sheila will have to undergo two more rounds of chemotherapy treatment in early November and mid-December. [ER pg. 60, Salehian Aff. ¶58, Ex. 5.]

Then on October 28, 2019, Salehian's first day back in the office, she had a scheduled meeting with Treasurer Conine and Chief of Staff Dickson, along with her Supervisor Yeatts at 3:30 pm. [ER pg. 60, Salehian Aff. ¶59, Ex. 6.]

Salehian planned to turn in her completed FMLA paperwork at that meeting, since the meeting was in person (normally it was by teleconference), and Salehian thought it would be more appropriate to make the request face to face, at her weekly meeting. Instead of meeting as planned, Chief of Staff Dickson asked Yeatts to "give them a few minutes" before joining the weekly meeting upstairs. [ER pg. 60, Salehian Aff. ¶60.]

Once Salehian arrived, instead of accepting the FMLA paperwork, Treasurer Conine and Chief of Staff Dickson proceeded to inform Sheila that her employment with the Nevada State Treasurer had ended. Salehian was shocked, surprised and completely caught off guard by the firing and despite repeated requests by Salehian for the reason behind the termination, Treasurer Conine refused to give a reason for the termination, except to say "he was going in a different direction" and Chief of Staff Dickson would present Plaintiff her final paperwork. [ER pgs. 60-61, Salehian Aff. ¶61, Ex. 7.]

Salehian was terminated without receiving any prior disciplinary action of any kind. Further she was performing her job satisfactorily at the time of her termination and in fact was given letters of recommendation by the past two State

Treasurers, Kate Marshall and Dan Schwartz, past supervisor and Chief of Staff at the Treasurer's Office Steve George and past supervisor and Chief Deputy Treasurer at the Treasurer's Office Mark Mathers, as well as her immediate supervisor for the prior two years, Yeatts. [ER pg. 61, Salehian Aff. ¶62.]

Salehian was 58 years old at the time of her termination (her date of birth is June 2, 1961), and Yeatts, Plaintiff's supervisor, age 62 at the time of her termination, was terminated the same day as Salehian without cause like Plaintiff. Further Yeatts was replaced with an employee more than half her age, Kirsten Van Ry, who was 30 years old when she was hired to replace Yeatts, and Plaintiff's replacement, Tya Mathis-Coleman, was 38 years old when she replaced Salehian and thus 20 years her junior. In addition, when Mathis-Coleman replaced Plaintiff, she had no prior experience in financial services. [ER pg. 61, Salehian Aff. ¶64.]

In fact, nine of the eleven positions hired or promoted in the College Savings Division since Treasurer Conine took office in January 2019 (including the two mentioned above) were individuals under the age of 40. [ER pg. 61, Salehian Aff. ¶65.]

# V.

## SUMMARY OF ARGUMENT

The district court clearly erred in granting Appellees motion for summary judgment with respect be being terminated and harassed in violation of the ADEA, having her right to take leave under the FMLA interfered/denied then terminated and not being fully accommodated for her disability under the ADA by *not* being granted a further leave of absence for her disability and instead being terminated.

With respect to the ADEA violations, an issue of material fact existed as to whether Salehian was terminated because of her age. The district court conceded that Appellant established a prima facie case of age discrimination under the

ADEA but found that Salehian's proffered evidence of pretext was insufficient to survive summary judgment.

But by doing so the district court impermissibly chose to weight the evidence, assess the credibility of witnesses, not properly credit the evidence of Appellate and ultimately decide the issues of material fact itself instead of leaving that determination to a jury.

In fact the district court found that Salehian had produced enough evidence to create an issue of material on whether Appellant displayed unprofessional conduct which justified terminating her and that generally Appellees' lack of documentation undermined their reason(s) for terminating Salehian, ie., because of performance issues, but ultimately found that that evidence was *not* specific or substantial enough to survive summary judgment.

As to Salehian's harassment claim under the ADEA, the district court found that Appellees actions were *not* severe or pervasive enough to create a hostile environment under the law, even though Appellant presented no less eleven times that Treasurer Conine's or Chief of Staff Dickson's actions or statements interfered with Salehian's expectations of a non-hostile work environment.

Finally with respect to being granted leave under the FMLA or ADA, the district court found that Salehian had *not* presented sufficient evidence or any evidence for a jury to conclude that the reason she was terminated was because, or to prevent her from, taking leave under the FMLA or ADA.

Thus because the district court impermissibly chose to *not* properly credit Salehian's evidence and *not* make all reasonable inferences on the evidence for Salehian and instead chose to improperly weight the evidence and assess the credibility of witnesses. This being the case, it is imperative here that the Court of Appeals overturn the district court's grant of summary judgment for Appellees with instructions to the district court to proceed with a jury trial on the merits.

## VI.

## STANDARD OF REVIEW

### A.    Legal Standard Applicable to a Motion for Summary Judgment.

Under *Rule 56(c)*, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "More important….summary judgment will not lie if the dispute about a material fact is "genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249.

"[T]rial courts should act....with caution in granting summary judgment...." *Id.* at 255."  Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict.  The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.*

Recently the Supreme Court reiterated the long standing standard a judge is supposed to use in deciding whether to grant summary judgment.  In the case of *Tolan v. Cotton*, 572 U.S. 650, 134 S.Ct. 1861, 1866 (2014), the Supreme Court

reversed the lower court's grant of summary judgment, holding the lower court failed to credit the opposing party's evidence and the reasonable inferences therefrom, which contradicted the evidence of the moving party. *Id.* at 1866-1868.

In the decision the Supreme Court held that, "[A] 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial'." (Citation omitted). "Summary judgment is appropriate only if 'the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law'." (Citation omitted). In making that determination, a court must view the evidence 'in the light most favorable to the opposing party'." (Citation omitted)." *Id.* at 1866.

### B.    Standard of Review for a Motion for Summary Judgment.

The Ninth Circuit applies the de novo standard of review when reviewing a district court decision granting a motion for summary judgment. *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002).

In conducting a de novo review, the appellate court does not defer to the lower court's ruling, but independently considers the matter anew, as if no decision had been rendered on the matter below. *Voigt v. Savell*, 70 F3d 1552, 1564 (9th Cir. 1995).

The reviewing court must determine whether when viewing the evidence in the light most favorable to the nonmoving party there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Valdez v. Rosenbaum*, 302 F3d 1039, 1043 (9th Cir. 2002).

# VII.

## ARGUMENT

**A.    Introduction.**

On summary judgment a judge is supposed to look at the evidence for the non-moving party and make all reasonable inferences for the non-moving party. The judge is *not* a fact finder, that is why we have juries.  If the judge likes the moving party's version of the facts better, that is *not* reason to grant summary judgment.  It is only proper to grant summary judgment, if when looking at all the evidence in the non-moving party's favor and making reasonable inferences on that evidence for the non-moving party, *no* reasonable jury could rule for the non-moving party.

As is clear throughout the district court's opinion, instead of deciding whether there is an issue of material fact for trial, the district court impermissively weighed and analyzed the evidence like a trier of fact would do, failed to credit evidence for Salehian and decided the genuine issues of material fact itself instead of leaving that for a jury to decide at trial.

Thus if the rule of law on summary judgment is followed in this case, there is absolutely "no way" that summary judgment should have been granted for Appellees on the evidence presented.

This being the case, the district court's grant of summary judgment should be reversed and the case should be remanded back to the district court with instructions to proceed to a trial on the merits.

**B.  At a Minimum there is an Issue of Material Fact for Trial on Whether Appellees Violated the ADEA by Terminating Salehian Because of her Age.**

**6.  The ADEA Prohibits Discharging an Employee Because of the Employee's age.**

The ADEA prohibits employers from failing or refusing to hire, discharging, or otherwise discriminating against any individual "with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. §623(a)(1).  ADEA claims based on circumstantial evidence use the burden shifting framework laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-06 (1973); *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008).  Thus, the proof structure in an ADEA case is the same as that of Title VII. *Pejic v. Hughes Helicopters, Inc.*, 840 F.2d 667, 674 (9th Cir. 1988).[1]

The plaintiff carries the initial burden of establishing a prima facie case of age discrimination. *Diaz*, 521 F.3d at 1207.  If the plaintiff "has justified a presumption of discrimination," the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its adverse employment action. *Id.*  If the employer satisfies its burden, the employee must then prove that the reason advanced by the employer constitutes mere pretext for unlawful discrimination. The plaintiff has the "ultimate burden of proving that age was a 'determining factor' in the employer's alleged unlawful conduct." *Pejic*, 840 F.2d at 674.

In reviewing motions for summary judgment in the employment

---

[1] Although the United States Supreme Court ruled that "but-for" causation is required in an ADEA case, the Supreme Court has *not* ruled definitively on whether the *McDonnell Douglas* framework still applies to ADEA cases and for that reason courts still use the *McDonnell Douglas* analysis in evaluating disparate treatment cases brought under the ADEA. *Gross v. FBL Fin'l Services, Inc.*, 129 S.Ct. 2343, 2349, fn. 2.s

discrimination context, a court must "zealously guard[ ] an employee's right to a full trial, since discrimination claims are frequently difficult to prove without a full airing of the evidence and an opportunity to evaluate the credibility of the witnesses." *McGinest v. GTE Service Corp.*, 360 F.3d 1103, 1112 (9th Cir. 2004); *Weil v. Citizens Telecom Servs. Co.*, 922 F.3d 993, 1001 (9th Cir. 2019).

As the Supreme Court has stated, "The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed." *Oncale v. Sundowner Offshore Serv., Inc.*, 523 U.S. 75, 81-82 (1998). As a result, when a court too readily grants summary judgment, it runs the risk of providing a protective shield for discriminatory behavior that our society has determined must be extirpated. *McGinest,* 360 F.3d at 1112.

"As a general matter, the plaintiff in an employment discrimination action need produce *very little evidence* in order to overcome an employer's motion for summary judgment." *Diaz*, 521 F.3d at 1207; *Chuang v. University of Cal Davis, Board of Trustees*, 225 F.3d 1115, 1124 (9th Cir. 2000).

As will be shown below the evidence in this case at the very least presents an issue of material fact for the jury on whether Plaintiff was terminated because of his age.

> **7. The Evidence in this Case, Especially when Looked at in the Light Most Favorable to Salehian, Establishes a Prima Facie Case of Age Discrimination.**

A plaintiff can establish a prima facie case of age discrimination by demonstrating he was "(1) at least forty years old, (2) qualified for the position/performing job satisfactorily, (3) discharged, and (4) replaced by a substantially younger employee(s) with equal or inferior qualifications. *Reeves v.*

*Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). "It is undisputed that petitioner satisfied this burden here: (i) at the time he was fired, he was a member of the class protected by the ADEA (individuals who are at least 40 years of age, 29 U.S.C. §631(a)), (ii) he was otherwise qualified for the position of Hinge Room supervisor, (iii) he was discharged by respondent, and (iv) respondent successively hired three persons in their thirties to fill petitioner's position." *Id.*

The requisite degree of proof necessary to establish a prima facie case is minimal on summary judgment and does not need to meet a preponderance of the evidence standard. *Coglan v. Am. Seafoods Co.*, 413 F.3d 1090, 1094 (9th Cir. 2005).

The Supreme Court has cautioned that the prima facie requirements for making a statutory discrimination claim "is not onerous" and poses "a burden easily met." *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

### a.    At Least Forty Years Old.

As to the first prong of his prima facie case which is not in dispute, Salehian was born on June 2, 1961 making her 58 years old when she was terminated on October 28, 2019. [ER pg. 52, Salehian Aff. ¶3.]

### b.    Qualified for the Position/Performing Job Satisfactorily.

As to the second prong of Salehian's prima facie case, when Appellant was terminated from the State Treasurer's on October 28, 2019, she had been employed there since January 9, 2012 (over seven years) as a Senior Deputy Treasurer and then Executive Director of the Governor Guinn Millennium Scholarship Program. [ER pg. 52, Salehian Aff. ¶2.]  In addition she had over 23 years of working in financial services with Citigroup prior to that. [ER pg. 52, Salehian Aff. ¶5.]

Further there is clear evidence that Salehian was performing her job satisfactorily when she was terminate as forth in the affidavit of her direct

supervisor Yeatts.[2]

Virtually everyone other than Conine, Chief of Staff Dickson and Chief Deputy Treasurer Hagan thought that Salehian did a good job.

This included her direct supervisor Yeatts who was her direct supervisor during the whole time Salehian worked under Conine (see Affidavit of Yeatts), Appellant's direct supervisor prior to Yeatts Linda English (see Affidavit of English), Cherie McDowell who worked with Appellant in the unclaimed property department from approximately September 2015 through October 28, 2019 (see Affidavit of McDowell), the two previous State Treasurers Kate Marshall and Dan Schwartz and the previous Chief of Staff Steve George and previous Chief Deputy Treasurer Mark Mathers. [ER pgs. 53, 63-67, Salehian Aff. ¶10, Ex. 1.]

And Treasurer Conine when asked by Salehian when she was being terminated, why she was being terminated, didn't say it was because her job performance wasn't satisfactory, but rather that the Treasurer's office was "going in a different direction". [ER pg. 113, Conine Depo. 94:17-20.]

In fact there is no written documentation in this case that anyone at the Nevada State Treasurer's Office ever said that Appellant was not performing her job satisfactorily until Salehian filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and this lawsuit was filed afterwards.

---

[2] See Affidavit of Beth Yeatts paragraphs 10 and 54 "During the time I worked with Sheila, she never had a single complaint or grievance filed against her" and "Salehian was terminated without receiving any prior disciplinary action of any kind."

### c. Discharged.

As to the third prong of Salehian's prima facie case, as set forth above, Appellant was discharged from her employment on October 28, 2019. [ER pg. 52, Salehian Aff. ¶4.]

### d. Replaced by a Substantially Younger Employee(s) with Equal or Inferior Qualifications.

Where there is a substantial difference in age, a plaintiff can make a prima facie case of disparate treatment by showing that he or she was replaced by a substantially younger employee, whether or not the younger employee is also within the protected class of employees aged 40 or older. *EEOC v. McDonnell Douglas Corp.*, 191 F.3d 948, 951 (8th Cir. 1999); *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 312 (1996).

Further, although there is no bright line rule on how many years younger a newly hired employee needs to be to be considered "substantially younger", most courts hold that there needs to be at least a five year age difference [See *Williams v. Raytheon*, 220 F.3d 16, 20 (1st Cir. 2000); *Whittington v. Nordam Group, Inc.*, 429 F.3d 986, 996 (10th Cir. 2005)], while some courts hold there must be at least a 10 year difference. See *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 619 (7th Cir. 2000); *Bennington v. Caterpillar, Inc.*, 275 F.3d 654, 659 (7th Cir. 2001).

Here Salehian was replaced by Tya Mathis-Coleman who was 38 years old [ER pg. 131, Mathis-Coleman 19:22-25] when she replaced Salehian and thus 20 years her junior. [ER pg. 52, Salehian Aff. ¶3.]

Although Appellees claim Mathis-Coleman had more experience that Salehian. This is just not the case. As set forth above Appellant had over seven years working for Nevada State Treasurer's Office some of which was working in the exact position, ie., Executive Director of the Governor Guinn Millennium Scholarship Program for which Mathis-Coleman was hired for. [ER pg. 52,

Salehian Aff. ¶2.] In addition she had over 23 years of working in financial services with Citigroup prior to that. [ER pg. 52, Salehian Aff. ¶5.]

This included managing multi million dollars projects similar in size and scope to what she to manage when she worked as Executive Director of the Governor Guinn Millennium Scholarship Program. Further Mathis-Coleman prior to coming to the State Treasurer's office was helping individuals with the financial aid packages opposed to dealing with multi million dollars 529 savings programs and holding vendors responsible for the same. Prior to coming to the State Treasurer's office Mathis-Coleman was handling micro type of financial reviews for students [ER pg. 130, Mathis-Coleman 9:9-13] opposed to macro financial review that Salehian handled when she was a Senior Relationship Manager at Citigroup and then in her roles with the State Treasurer's office. [ER pg. 52, Salehian Aff. ¶5.]

Appellant also had public sector experience at the Clark County Recorder's office as a recordation administer from December 2009 through January 2012. [ER pg. 52, Salehian Aff. ¶5.]

Given the minimal burden to establish a prima facie case on summary judgment in the first place, see *Coglan* and *Burdine* above, the evidence presented here definitely meets that burden for summary judgment purposes.

### 3. Appellees have Met their Burden to Rebut Salehian's Prima Facie Cases of Age Discrimination.

If a plaintiff makes out a prima facie case, the burden shifts to the defendant to offer a legitimate, non-discriminatory reason for the employment action. This requires the employer only to set forth a legally sufficient explanation for rejecting the plaintiff. *Lowe v. City of Monrovia*, 775 F.2d 998, 1007 (9th Cir. 1985). This burden is "one of production, not persuasion, thereby involving no credibility

assessment." *Lindsey v. SLT Los Angeles, LLC*, 447 F.3d 1138, 1148-49 (9th Cir. 2006)[citing *Reeves,* 530 U.S. at 142].

Here Appellees claims Appellant was terminated for the following reasons:

"Here, Plaintiff was terminated for legitimate nondiscriminatory reasons related to Plaintiff's performance, i.e., Plaintiff's resistance to changes/challenges, her general unwillingness to focus on the new administration's priorities, and her unprofessional conduct towards co-workers. Furthermore, there is no dispute that Plaintiff was an unclassified state employee who served at the pleasure of the elected State Treasurer." *See* ECF No. 39 pg. 14, lines 17-21, Appellees' MSJ.

Since Appellees' burden to rebut Appellant's prima facie case is only one of production not persuasion, Appellees have met their burden.

### 4. An Issue of Material Fact Exists as to Whether Appellees' Reasons for Terminating Salehian are False and a Pretext for them Terminating Salehian Because of her Age.

The final stage of the *McDonnell Douglas* analysis requires Plaintiffs to raise a genuine issue of material fact concerning whether the facially legitimate reasons proffered by Defendant are pretextual. *Reeves,* 530 U.S. at 143. No additional evidence of discriminatory motive is required. *Reeves,* 530 U.S. at 148.

In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. *Reeves,*530 U.S. at 147; see also *Snead v. Metro. Prop. & Cas. Ins. Co.,* 237 F.3d 1080, 1093-94 (9th Cir. 2001).

Moreover, once the employer's stated justification has been eliminated, discrimination may well be the most likely alternative explanation.....especially since the employer is in the best position to put forth the actual reason for its decision. *Reeves,* 530 U.S. at 147.

Thus, a plaintiff's prima facie case, combined with sufficient evidence to

find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated. *Reeves,* 530 U.S. at 148.

As set forth above, Appellees claim Salehian was terminated for performance reasons, specifically because she was resistance to changes/challenges, her general unwillingness to focus on the new administration's priorities, and her unprofessional conduct towards co-workers.

First Appellees have tried to justify that Appellant was terminated for performance reasons after the fact. There is absolutely *no* evidence in this case that Salehian was talked to or warned about performance issues besides the after the fact self-serving statements of Treasurer Conine, Chief of Staff Dickson and Chief Deputy Treasurer Hagan.

There is not one bit of documentary evidence in this case of Appellant receiving emails about her performance or that she was being terminated because of her performance, text messages about her performance or that she was being terminated because of her performance, written warnings about her performance, being asked to sign a performance improvement plan about her performance, being suspended because her performance, etc. [ER pgs. 105-107, 110, 112, 114, 115-116, Conine Depo. 54:25-56:22; 72:11-20; 74:7-12; 98:10-23; 106:12-107:6.][3]

After all this is the information age with all the different means available to communicate with someone and we are dealing with the State of Nevada one of the biggest employer's in the State.

It is absolutely unfathomable that there would not be some kind of "paper

---

[3] The only documentary evidence of Appellant's alleged performance deficiencies were in response to interrogatories Salehian propounded in this case and in response to Salehian's EEOC charge. [See answer to interrogatory no. 1, ER pgs. 94, 96-102, Balaban Aff. ¶3, Ex. 1.]

trial" made if Salehian's performance was such a problem.

*See McGinest,* 360 F.3d at 1123, "the absence of any documentation confirming that a company hiring freeze was in place during the relevant time period is sufficient to raise a genuine factual dispute as to whether the asserted reason was pretextual. Indeed, even if such decisions were commonly conveyed to yard managers by word-of-mouth, the fact that a company the size of GTE does not have a memorandum, meeting notes, or other evidence of this hiring freeze or the financial difficulties that allegedly spurred the hiring freeze provides circumstantial evidence that the hiring freeze did not in fact exist."

Second if Salehian's performance was such a problem then why wasn't her direct supervisor Yeatts informed of the problem. As Yeatts testified to in her affidavit, she never received any negative job performance feedback from Treasurer Conine, Chief of Staff Dickson or anyone else, for the entire ten months Salehian worked for Treasurer Conine. [ER pg. 148, Yeatts Aff. ¶7.]

Further neither Treasurer Conine, Chief of Staff Dickson nor anyone else asked to meet with Yeatts or discuss concerns about Salehian's performance or that of her department nor was Yeatts instructed to initiate any improvement measures against Salehian or her department. Furthermore, Yeatts was present at various office meetings when Treasurer Conine, complimented and thanked Sheila for her work. [ER pg. 148, Yeatts Aff. ¶8.]

In addition the concerns that Appellees state that they had about Salehian's performance are just *not* supported by the record.

First addressing that Salehian was resistance to changes/challenges and was generally unwillingness to focus on the new administration's priorities. As stated in her affidavit, Salehian was more than willing to take direction and focus on administration priorities from Treasurer Conine when he took office in 2019. She gave *no* resistance to the changes Treasurer Conine put in place once he took

office. Under Treasurer Conine, Sheila was not only willing to switch direction based on the new Treasurer's priorities, she led many of the initiatives he instructed the office to coordinate and deploy. [ER pg. 52, Salehian Aff. ¶¶6-7.]

Further Yeatts agrees with this assessment by Salehian. [ER pg. 148, Yeatts Aff. ¶¶5-6.] And English who was Salehian's supervisor before Yeatts agreed that Salehian was willing to take direction and focus on the administrative priorities of Dan Schwartz, the Treasurer before Conine. [ER pg. 139, English Aff. ¶¶4-5.][4]

Second addressing that Appellant showed unprofessional conduct towards co-workers. Again Salehian states in her affidavit that she never exhibited any unprofessional conduct towards co-workers, subordinates, or supervisors and never "yelled and belittled" staff members. [ER pg. 54, Salehian Aff. ¶18.] Something that her supervisor Yeatts agrees with. [ER pg. 150, Yeatts Aff. ¶¶17-18.] In addition English never witnessed Salehian exhibit any unprofessional conduct towards co-workers, subordinates, or supervisors during the time she worked with Appellant. [ER pg. 140, English Aff. ¶11.]

While Appellees have attached depositions testimony or declarations to support these allegations and that Salehian's termination was not due to her age (among other things), on summary judgment the court is supposed to look at all the evidence and make all inferences for the non-moving party.

The fact that Appellees say that Salehian's termination was not because of her age is a given. In one hundred percent of the cases the employer is going to say that they didn't terminate the employee because the protected class at issue. Why would they say anything else?

---

[4] While this doesn't relate directly to Treasurer Conine, it shows that Salehian was willing to take direction and focus on administrative priorities before Treasurer Conine so it at a minimum creates doubt that she would suddenly switch and not take direction and focus on the priorities on Treasurer Conine.

Finally Treasury Conine and Chief of Staff Dickson decided to also terminate Yeatts on the same day as Salehian and Yeatts was 62 years of age when she was terminated and replaced by Kirsten Van Ry, someone more than half her age. [ER pg. 155, Yeatts Aff. ¶56; ER pg. 61, Salehian Aff. ¶64; ER pgs. 133-137, Van Ry Depo. 18:25-19:3.] In fact, nine of the eleven positions hired or promoted in the College Savings Division since Treasurer Conine took office in January 2019 (including the two mentioned above) were individuals under the age of 40 years old. [ER pgs. 155-156, Yeatts Aff. ¶57; ER pg. 61, Salehian Aff. ¶65.]

So without weighing the evidence and accepting their version of the facts it is hard to imagine how this Court could conclude that there are not issues of facts for trial as to whether Appellant was terminated because of her age.

The Court of Appeals would have to accept that Salehian was terminated because of her performance even though she was never told there was a problem with her performance and even when she asked Treasurer Conine why she was terminated, he said the Treasurer's office is "going in a different direction" instead of Salehian's performance was bad. [ER pg. 113, Conine Depo. 94:17-20; ER pgs. 123-124, Dickson Depo. 59:2-7; 60:9-21.]

Further this is inconsistent with everyone else's account of Salehian's work performance going back almost to when she started with the Nevada State Treasurer's Office in 2012.

Appellees want this court to accept that Treasurer Conine and Chief of Staff Dickson had the authority to terminate Salehian and because they said it was performance related, it was performance related. But under the law as it relates to summary judgment, it is reasonable on the facts presented to conclude that once Treasurer Conine took office he preferred having younger employees (and Salehian and Yeatts the two oldest employees at the State Treasurer's and the only employees that Treasurer Conine involuntarily terminated during his time as

treasurer [ER pg. 111, Conine Depo. 73:5-10]), were the casualties of this preference.

> 5.    **The District Court Erred in Finding there was Insufficient Evidence of Pretext by *not* Properly Crediting Salehian's Evidence and *not* Making all Reasonable Inferences on the Evidence for Salehian like a Judge is Supposed to do when Deciding a Motion for Summary Judgment.**

Although the district court found in its order granting summary judgment that Salehian established a prima facie case of Age Discrimination[5] it ultimately found that Salehian presented insufficient evidence of prextext and thus granted Appellees' motion for summary judgment on that count.

First, the district court agreed with Appellees' assertion that they terminated Salehian for performance reasons, ie., specifically because she was resistance to changes/challenges, her general unwillingness to focus on the new administration's priorities, and her unprofessional conduct towards co-workers, even though this was a shift from the reason that Conine gave Appellant, ie., they were "going in a different direction" when she repeatedly asked why she was being terminated. [ER pgs. 60-61, Salehian Aff. ¶61.]

Unbelievably in the district court analysis it cites a case that is right on point with what Salehian is arguing!

The district court cites to *Ramirez v. Kingman*, 374 F. Supp.3d 832, 852 (D. Ariz. 2019), which held that employer's failure to document alleged productivity issues, which was one of the asserted reasons for the termination, when considered with the fact that employer gave "shifting" reasons for termination, was evidence

---

[5] ER pg. 30, district court order, 6:13-14

of pretext.[67]

This is exactly what happened in this case. Treasurer Conine told Salehian that she was being terminated because the Treasurer's office was "going in a different direction" but then once the case was filed and Nevada State Treasurer's Office was asked to state the reason(s) for Appellant's termination as part of discovery, they and their attorneys conveniently came up with a shifting reason(s) why Salehian was terminated, ie., because of her performance, for which they have no documentation of, including but not limited to, write-ups, email, texts, etc.

As stated above, it is absolutely unfathomable that there would *not* be some kind of "paper trial" made if Salehian's performance was such a problem. *See McGinest, supra,* 360 F.3d at 1123.

While the district court says "[t]he lack of documentation in the instant case is not particularly compelling as defendants have not shifted or changed their reasons for terminating Salehian, nor are such reasons the kind for which a lack of underlying documentation would be particularly surprising"[8], the evidence clearly supports that Appellees did change their reason(s) for terminating Salehian once she pursued an action with the EEOC and filed her lawsuit.

Treasurer Conine saying that the Treasurer's office was "going in a different direction" when Salehian was terminated (which is supported by Chief of Staff

---

[6] ER pg. 35, district court order, 11:6-9.

[7] *See also EEOC v. Pape Lift, Inc.*, 115 F.3d 676, 680 (9th Cir. 1997) - shifting explanations "were unsuccessful attempts to mask statutory violation"; *Steele v. Mattis*, 899 F.3d 943, 949-950 (DC Cir. 2018) - inconsistencies of explanations by employer for termination and the fact that employee was replaced by younger worker "could spark reasonable disbelief"; and *Velez v. Thermo King de Puerto Rico, Inc.*, 585 F.3d 441, 449 (1st Cir. 2009) – employer advanced "shifting explanations" for termination.

[8] ER pg. 35, district court order, 11:9-12

Dickson)[9] is a clear shift of reasons for Appellant's termination.

This arguably shows pretext when coupled with the fact that there is absolutely *no* documentation that Appellant's performance was a problem. If it was problem, there is *no* reason, and Appellees haven't stated a reason, why Treasurer Conine (or Dickson) did not tell Salehian that her performance was the reason for her terminated when she repeatedly asked them for a reason when she was terminated.

Even the district court found that "the lack of documentation here supports a finding of pretext in a general sense".[10][11]

Further as to the shifting reasons Appellees gave for Salehian's termination, ie., because she was resistance to changes/challenges, her general unwillingness to focus on the new administration's priorities, and her unprofessional conduct towards co-workers, the district court concedes that Appellant has produced enough evidence to create a triable issue of fact as to whether she displayed unprofessional conduct towards co-workers[12]

As to the other two reasons, it is clear that the district court impermissively weighted the evidence, wrongfully assessed credibility of witnesses and made

[9] [ER pg. 113, Conine Depo. 94:17-20; ER pgs. 123-124, Dickson Depo. 59:2-7; 60:9-21]

[10] ER pg. 35, district court order, 11:15-16.

[11] The district court's order also says that given the circumstances, the lack of documentation "is neither specific nor substantial by itself to survive summary judgement." ER pg. 35, District court order, 11:16-17. While the evidence presented by Salehian *is* specific and substantial enough under the circumstances, there is *no* requirement in the ninth circuit that evidence has to be specific and substantial to survive summary judgment. *See Cornwell v. Electra Central Credit Union*, 439 F.3d 1018, 1030-1031 (9th Cir. 2006).

[12] ER pg. 33, district court order, 9:21-23

reasonable inferences for Appellees, *not* Appellant.

On a motion for summary judgment, courts must not weigh the evidence or assess credibility, but rather must make all reasonable inferences in favor of the non-moving party. See *Tolan*, 572 U.S. at 655-59 (per curiam) (holding that, in determining whether a dispute about a material fact is "genuine," the trial court must not weigh the evidence and instead must draw all reasonable inference in the nonmoving party's favor).

As stated above, Salehian was more than willing to take direction and focus on administration priorities from Treasurer Conine when he took office in 2019, gave no resistance to the changes Treasurer Conine put in place once he took office and not only was willing to switch direction based on the new Treasurer's priorities, she led many of the initiatives he instructed the office to coordinate and deploy. [ER pg. 52, Salehian Aff. ¶¶6-7.] [13]

Further Yeatts agrees with this assessment by Salehian [ER pg. 148, Yeatts Aff. ¶¶5-6] and English who was Salehian's supervisor before Yeatts agreed that Salehian was willing to take direction and focus on the administrative priorities of Dan Schwartz (the Treasure before Conine) and led many of the initiatives he instructed the office to coordinate and deploy. [ER pg. 139, English Aff. ¶¶4-5.]

As the ninth circuit has previously found in *E.E.O.C. v. Boeing Co.*, 577 F.3d 1044, 1051 (9th Cir. 2009), "[A]lthough subjective evaluations of an employee's skills of course may differ for a variety of reasons, specific positive evaluations of Castron's [employee in that case] performance, both by her coworkers and by other managers, critically undermine the credibility of her official evaluation in a manner relevant to determining the existence of pretext.

---

[13] *See Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 331-332 (3rd Cir. 1995) – Employee's testimony showing that employer's criticisms of employee's work performance was "errant or misplaced" were a pretext for age discrimination.

We therefore adopt the Tenth Circuit's view that 'co-workers' assessment[s]' of a plaintiff's work should be considered because they can be 'clearly probative of pretext'." *Abuan v. Level 3 Commc'ns, Inc.*, 353 F.3d 1158, 1174 (10th Cir.2003).

But instead of believing Salehian and her last two supervisors at the Nevada State Treasurer's office like a court is supposed to do on summary judgment, the district court chose to believe Appellees even though they have *no* documentation to support either of these reasons for termination.

Further with respect to Yeatts it is clear that the district court is assessing her credibility by saying she was fired and suggesting her work was unsatisfactory (even though there is *no* evidence that this was the case) and thus concluding that Yeatts testimony should *not* be credited or believed even though she was Salehian's direct supervisor. [14]

Finally if Salehian's, Yeatts' and English's observations and testimony is sufficient to create a triable issue of fact as to whether Salehian showed unprofessional conduct towards co-workers, it should also be sufficient to create a triable issue of fact as to whether she was resistance to changes/challenges and her general unwillingness to focus on the new administration's priorities.

This is particularly the case if all the evidence is looked at in a light most favorable to Salehian and all reasonable inferences are made for Salehian, like is supposed to done when deciding a motion for summary judgment. *See Anderson*, 477 U.S. at 255.

In addition both Salehian and Yeatts stated in their affidavits that nine of the eleven positions hired or promoted in the College Savings Division since Treasurer Conine took office in January 2019 were individuals under the age of 40. [ER pg. 61, Salehian Aff. ¶65; ER pgs. 155-156, Yeatts Aff. ¶57.]

While this statistical evidence might fall short of proving Salehian case for age discrimination by itself, it may still be relevant evidence showing that the employer's articulated reason for its employment decision is pretextual. *Diaz v. AT&T*, 752 F.2d 1356, 1363 (9th Cir. 1985).

While the district court takes issue with the adequacies of Salehian's and Yeatts' affidavits on this issue, included in the nine hires under 40 are Salehian's replacement Tya Mathis-Coleman and Yeatts replacement Kirsten Van Ry. [ER pg. 61, Salehian Aff. ¶65.]

And the fact that Salehian was 58 years old at the time of her termination and replaced by Mathis-Coleman who was 38 years old when she replaced Salehian and thus 20 years her junior, and that on the same day Van Ry, 30 years old at the time, was hired to replace Yeatts who was 62 years old on that day, is powerful evidence showing age might have been the reason for the terminations of not only Appellant but also Yeatts.

Thus with this evidence along with the evidence of pretext set forth above, it would be reasonable for a jury to conclude that age was the reason for both Salehian's and Yeatts' terminations.

Finally the inappropriate age related comments and treating younger employees more favorably by decision makers Treasurer Conine and Chief of Staff Dickson, along with other evidence of discrimination, may be sufficient for a jury to infer discriminatory intent and age discrimination. *See Fitzgerald v. Action, Inc.*, 521 F.3d 867, 876-877 (8th Cir. 2008).

The district court was in error when it concluded that Salehian lacked specifics to conclude that the younger employees who were treated better were *similarly situated* because when looking at the evidence that Appellant has

---

[14] In direct contravention of what a court is supposed to do on summary judgment,

33

presented, especially in the light most favorably to Salehian, a jury *could* reasonably conclude that these actions (along with other evidence of discrimination) show a discriminatory animus by Treasurer Conine and Chief of Staff Dickson towards Salehian based on her age.

For example when Salehian was told by Dickson that she would be getting a smaller office than younger staff/deputies, she was obviously at least similarly situated with the younger staff/deputies because she says that the office assignment ran in contravention to a prior planned office move a few years earlier in which offices were going to be assigned based on staff level and seniority according to State of Nevada rules. [ER pg. 56, Salehian Aff. ¶32.] Obviously Salehian wouldn't be complaining about this if she did not have more seniority than the younger staff/deputies and thus was at least similarly situated with them.

In addition Salehian was at least similarly situated with the younger newly appointed deputies under Treasurer Conine's leadership which Salehian experienced a reduction of duties including media outreach responsibilities between February 2019 and October 2019 given the younger deputies were newly appointed. [ER pg. 57, Salehian Aff. ¶33.]

Further Salehian was at least similarly situated with the younger staff, all under 40 years of age, which were allowed to pick up Treasurer Conine and accompany him to public facing meetings or functions because prior to the change, it had been a main component of Appellants job for the past 7 years. [ER pg. 57, Salehian Aff. ¶35.]

Finally the discriminatory comments made by Chief of Staff Dickson to Salehian, *see* ER pgs. 55-56, Salehian Aff. ¶¶23-27, 30, when considered with the other evidence presented, could reasonably support a jury finding that Salehian

---

*see Tolan*, 572 U.S. at 659.

was terminated because of her age.

While the district court found the comments make *no* reference to Salehian and were ambiguous at best, the comments as whole along with the evidence of pretext presented, could cause a reasonable jury to rule for Appellant on the age discrimination count.[15]

Considered together, the facts in this case "lead to the inescapable conclusion that the court below credited the evidence of the party seeking summary judgment and failed properly to acknowledge key evidence offered by the party opposing that motion." *Tolan*, 572 U.S. at 659.

"[T]he witnesses on both sides come to this case with their own perceptions, recollections, and even potential biases. It is in part for that reason that genuine disputes are generally resolved by juries in our adversarial system. By weighing the evidence and reaching factual inferences contrary to Salehian's competent evidence, the court below neglected to adhere to the fundamental principle that at the summary judgment stage, reasonable inferences should be drawn in favor of the nonmoving party." *Tolan*, 572 U.S. at 660.

---

[15] *See EEOC v. Pape Lift, Inc.*, 115 F.3d at 683-684 – Employee with a 24 year record of excellent performance was terminated on year after his company was purchased. His new supervisor called employee an "old geezer" and an "old fart," and stated that he "didn't fit the mold of a young, aggressive type manager" that the company wanted. This evidence supported a verdict of age discrimination, supervisor's comments were evidence of his desire to get rid of employee and thus tied to the decision to terminate employee; *See also* Sischo-Nownejad v. Merced Community College District, 934 F.2d 1104, 1112 (9th Cir. 1991) – Supervisors called female professor "an old warhorse" and her students "little old ladies." These remarks coupled with adverse changes in the conditions of professor's employment were sufficient to raise and inference of discriminatory intent. The inference was sufficient both to establish her prima facie case and to raise a question of fact regarding employer's stated reasons for adverse action taken against professor.

**C.    At a Minimum there is an Issue of Material Fact for Trial as to Whether Appellees are Liable for Creating a Hostile Environment for Salehian Because of her Age in Violation of the ADEA.**

As set forth above, the ADEA protects workers aged forty or older from employment discrimination on the basis of their age.   The ADEA "reflects a societal condemnation of invidious bias in employment decisions." *McKennon v. Nashville Banner Pub. Co., supra,* 513 U.S. at 357.

Although the United States Supreme Court has not addressed this issue, several federal circuits have recognized hostile work environment claims based on age. See *Crawford v. Medina General Hospital*, 96 F.3d 830, 834 (6th Cir. 1996); *Burns v. AAF-McQuay, Inc.*, 166 F.3d 292, 294 (4th Cir. 1999); *EEOC v. Massey Yardley Chrysler Plymouth, Inc.*, 117 F.3d 1244, 1249 (11th Cir. 1997). The requirements for age harassment claim are as follows: (1) employee is at least 40 years old; (2) employee was subjected to age-related harassing works or actions; (3) the harassment unreasonably interfered with the employee's work performance and created an objectively intimidating, hostile or offensive work environment; and (4) there is a basis for holding the employer responsible for the harassment. *Crawford v. Medina General Hospital*, 96 F.3d at 836.

Here as alleged above Appellant was at least 40 years old (prong one). [ER pg. 52, Salehian Aff. ¶3.]  Further Salehian was subjected to age-related harassing works or actions as set forth above in ER pgs. 55-57, Salehian Aff. ¶¶ 23-36 (prong two).

Further the harassment unreasonably interfered with Salehian's work performance (prong three).  For example the incident that happened March of 2019 when Chief of Staff Dickson asked Salehian how long she had been with the

Nevada State Treasurer's office and when she responded seven years, Dickson said "she had been with the state forever" and commented that that was longer than he had ever worked anywhere made Salehian feel embarrassed because she felt that Dickson was trying to point out that Sheila had been around so long as a way to belittle her because of her age. [ER pg. 55, Salehian Aff. ¶23.]

Further in April of 2019 at a Deputy meeting when Chief of Staff Dickson made a statement about how outdated the Nevada State Treasurer's websites and said that it was probably an "age thing" made Salehian feel very offended by the comment and that it was directed at her. [ER pg. 55, Salehian Aff. ¶24.]

Shortly after that in April 2019, Chief of Staff Dickson asked to be given an overview of the Governor Guinn Millennium Scholarship Program and made a comment about "how it probably has been 20 years since the policies and procedures were updated" that he could only imagine when the program was installed there was probably "dot matrix printer" and people spending hours reconciling and that Dickson didn't see much difference now was extremely offensive and humiliated to Salehian as she felt the comments were directed at her age and her ability to do her job because of her age. [ER pgs. 55-56, Salehian Aff. ¶¶25-28.]

Finally in April of 2019 Salehian was denied attendance at a Financial Literacy leadership meeting in Nashville, TN by Treasurer Conine and when she asked about the reasoning for the denial, given her vast experience in financial literacy vs. newly appointed Chief of Staff Dickson her questions went unanswered. [ER pgs. 56, Salehian Aff. ¶¶29-30.]

Whether the conduct is actionable as hostile environment harassment requires both:

- an environment that a reasonable person would find hostile and abusive; and

- the victim's subjective perception that the environment is abusive. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993).

In addition to Salehian thinking the environment created by Treasurer Conine and Chief of Staff Dickson was hostile, Appellant's supervisor Yeatts also felt the repeated offensive, humiliating and harassing comments and actions directed toward Salehian because of her age created were hostile and affected Salehian's ability to do her job, thus making the work environment objectively hostile. [ER pgs. 150-152, Yeatts Aff. ¶¶19-30.]

Finally there is a basis her for holding the employer responsible for the harassment (prong four).

Although Salehian did not make a formal written complaint about the harassment during her employment with Nevada State Treasurer's Office, she told her supervisor Yeatts about the harassment on numerous occasions. She also told other employees about the harassment she was experiencing including Cherie McDowell, who was a Management Analyst IV with the Nevada State Treasurer's Office and had worked for the State of Nevada for over twenty years. [ER pg. 54, Salehian Aff. ¶20; ER pg. 150, Yeatts Aff. ¶¶19-20; ER pg. 145, McDowell Aff, ¶11 .]

The complaint procedure must allow the victim of harassment to complain to someone other than the offending supervisor. *Faragher v. City of Boca Raton*, 524 U.S. 775, 806 (1998).

Further even if she had made a formal complaint before she was fired, nothing would have been done to remedy the situation because the people doing the harassing, ie. State Treasurer Zach Conine, Chief of Staff Miles Dickson and Chief Deputy Treasurer Tara Hagan were also likely the ones who would investigate Appellant's allegations. [ER pg. 54, Salehian Aff. ¶21; ER pg. 150, Yeatts Aff. ¶21.]

Employee not barred from claiming harassment by failing to utilize the employer's formal complaint procedures where it is shown that the person(s) designated by the employer to receive such complaints joined in the harassment. *Swinton v. Potomac Corp.*, 270 F.3d 794, 801 (9th Cir. 2001).

The district court and Appellees argue that the conduct as a whole was not severe or pervasive enough to create a hostile work environment under the law, but under the circumstances, especially when looking at the evidence in a light most favorable to Plaintiff and drawing all reasonable inferences in her favor, it hard to conclude that at a minimum an issue of material fact is not left for the jury to decide.

The level of severity or pervasiveness required to transform a merely annoying or uncomfortable work environment into an actionable, sexually harassing hostile environment is usually a question of fact, to be determined by looking at all the circumstances, including:

- frequency of the discriminatory conduct;
- its severity;
- whether it is physically threatening or humiliating, or a mere offensive utterance;
- whether it unreasonably interferes with an employee's work performance. *Faragher*, 524 U.S. at 787-788; *Harris*, 510 U.S. at 17.

Harassment is actionable if it is "so severe or pervasive as to alter the conditions of (the victim's) employment and create an abusive working environment." *Clark County School Dist. v. Breeden*, 532 U.S. 268, 270 (2001).

Here Salehian has set forth no less than eleven incidents of harassment which occurred from March 2019 until she was terminated at the end of October 2019, most of which are corroborated by Appellant's supervisor Yeatts. [ER pgs. 55-57, Salehian Aff. ¶¶ 23-36; ER pgs. 150-152, Yeatts Aff. ¶¶19-30.]  Further

these incidents of harassment, arguably because of Salehian's age, made it more difficult for Salehian to do her job. [ER pg. 54, Salehian Aff. ¶ 19; ER pg. 150, Yeatts Aff. ¶19.]

Where the severity or pervasiveness of abuse is questionable, "it is more appropriate to leave the assessment to the fact-finder than for the court to decide the case on summary judgment." *Davis v. Team Electric Company*, 520 F.3d 1080, 1096 (9th Cir. 2008).

It is clear from the district court's analysis that whatever the evidence showed, the district court would have concluded that it was not severe of pervasive enough as a matter of law to constitute a hostile environment. It cited cases where there were only a couple incidents of harassment, not at least eleven like here.

Although the district court says in its order that "[e]ven if all her evidence is taken as true, no reasonable jury could find that Salehian was subjected to objectively severe comments or behavior motivated by age aninus"[16], this is obviously *not* the case given the evidence.

In fact if this cause of action is allowed to a jury, *not* only is it reasonable that the jury would find that Appellees created a hostile environment for Salehian because of her age, but it is likely they would.

For this reason the Court of Appeals should overturn the district court's grant of summary judgment for Appellees on this count.

**D.    At a Minimum there is an Issue of Material Fact for Trial as to Whether Appellees Interfered with Salehian's Rights to take Leave under the Family and Medical Leave Act.**

To protect the employee, the FMLA prohibits interference with the exercise of the employee's right to take leave. *29 USC §2615(a)*. The relevant provision

---

[16] ER pg. 42, district court order, 18:18-19

reads "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this title [and subchapter]." *29 USC §2615(a)(1)*.

Congress has authorized the Department of Labor ("DOL") to issue implementing regulation for the FMLA. *29 USC §2654*. These regulations are entitled to deference. *Chevron USA, Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843-44 (1984); *Bachelder v. America West Airlines, Inc.*, 259 F.3d 1112 n.9 (9th Cir. 2001).

DOL regulations state that "[t]he FMLA prohibits interference with an employee's rights under the law." *29 CFR §825.220(a)*. Any violation of the FMLA itself or of the DOL regulations constitute interference with an employee's rights under the FMLA. *29 CFR §825.220(b)*.

The DOL interprets "interference" it include "not only refusing to authorize FMLA leave, but discouraging an employee from using such leave." *Id.* The regulations specify on form of employer interference - i.e., "employers cannot use the taking of FMLA leave as a negative factor in employment actions." *29 CFR §825.220(c)*.

To make out a *prima facie* case of FMLA interference, an employee must establish that "(1)[they] were eligible for the FMLA protections, (2) [their] employer was covered by the FMLA, (3) [they] were entitled to leave under the FMLA, (4) [they] provided sufficient notice of [their] intent to take leave, and (5) [their] employer denied [them] FMLA benefits to which [they] were entitled." *Sanders v. City of Newport*, 657 F.3d 772, 778 (9th Cir. 2011)

Here there is sufficient evidence that Salehian notified Defendants of her intent to obtain FMLA leave prior to her termination. "After an employee alerts the employer of desiring to take leave for a reason that would qualify under the FMLA, the employer will be expected to obtain any additional required

information through informal means." *Escriba v. Foster Poultry Farms*, Inc., 743 F.3d 1236, 1243 (9th Cir. 2014). "The employee need not expressly assert rights under the FMLA or even mention the FMLA…but the employer should inquire further of the employee if it is necessary to have more information about whether FMLA leave is being sought by the employee, and to obtain the necessary details of the leave to be taken." *Id.* (emphasis in original)(citing 29 C.F.R. §825.302(c)). Salehian received her certification under the FMLA on October 17, 2019, in preparation for the meeting for October 28, 2019. [ER pgs. 59-60, 73-77, Salehian Aff. ¶56, Ex. 4.] She further provided Appellees with all necessary information regarding her need for leave, and otherwise performed all duties necessary to take advantage of the rights conferred by the FMLA.

This included informing Treasurer Conine, Chief of Staff Dickson and Yeatts of the need to work from home because of the scabbing and pain on her face from the treatment on October 8, 2019. [ER pg. 59, Salehian Aff. ¶54.] Updating the three on her condition including that she had completed her first round of chemotherapy treatments, ie., two weeks of a six week regiment, and thus had four weeks of treatment left on October 18, 2019. [ER pg. 60, Salehian Aff. ¶57.] And finally on October 22, 2019 thanking them for allowing her to work from home during her current chemotherapy treatment and informing them that Salehian will have to undergo two more rounds of chemotherapy treatment in early November and mid-December. [ER pgs. 60, 78-81, Salehian Aff. ¶58, Ex. 5.] .

Thus even if Salehian did not explicitly inform Appellees of her intent to take leave under the FMLA, Appellees had an obligation to inquire further whether Salehian was seeking FMLA leave rather than summarily terminating her. *Escriba*, 743 F.3d at 1243.

Appellee' argument that Salehian was never denied FMLA leave does not absolve them of their burden to investigate whether Salehian should have

appropriately been granted such leave. See *Bachelder v. American West Airlines, Inc.*, 259 F.3d 1112, 1130 (9th Cir. 2001) - Holding that a company whose employee provided two doctor's notes regarding her absences "was therefore placed on notice that the leave might be covered by the FMLA, and could have inquired further to determine whether the absences were likely to qualify for FMLA protection".

Although the district court agreed that Salehian provided sufficient notice to Appellees of her intent to take leave under the FMLA, it held that Appellant failed to demonstrate that her FMLA protected leave constituted a negative factor in the decision to terminate her.[17]

"[E]mployers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions." *Bachelder*, 259 F.3d at 1122 citing *29 CFR §825.220(c)*.

Here the district court concludes that Salehian failed to provide any evidence, direct or circumstantial, that her request to take FMLA led to the decision to terminate her.[18]  But given that the district court concluded that Appellant provided sufficient notice of her intent to take FMLA and then right after that she was terminated, it is reasonable to make the circumstantial inference on the evidence that Appellees terminated Salehian because they were on reasonable notice of her potential for FMLA leave rights and didn't want to grant her leave so they terminated her instead.

Further the district court finds that Appellees provided evidence that the decision to terminate Salehian was in progress by August of 2019 well before the first time they would have first had reasonable notice of Salehian's potential need

---

[17] ER pgs. 44-45, district court order, 20:23-21:14.

[18] ER pg. 45, district court order, 21:2-3.

for FMLA leave and thus the court concludes that because the decision to terminate was set in motion well before Appellees had notice of Salehian's intent to take FMLA leave, that the intent to take FMLA leave could *not* have reasonably been the reason for her termination.[19] [20]

But by doing so, the district court was clearly making reasonably inferences on the evidence for Appellees, the moving party, when it was supposed to make all reasonable inferences on the evidence, circumstantial on otherwise, for Salehian, the non-moving party.

Thus by improperly weighing the evidence and reaching factual inferences contrary to Salehian's competent evidence, the district court neglected to adhere to the fundamental principle that at the summary judgment stage, reasonable inferences should be drawn in favor of the nonmoving party." *Tolan*, 572 U.S. at 660.

This being the case, a material issue of fact exists for trial on whether Appellees wrongly interfered with Salehian right to take leave under the FMLA.

**E.     At a Minimum there is an Issue of Material Fact for Trial as to Whether Appellee Met their Duty to Reasonably Accommodate Salehian's Disability under the ADA Including Providing her a Further Leave of Instead of Terminating her.**

First although Appellees have questioned it, Salehian has shown that she is

---

[19] ER pg. 45, district court order, 21:6-8

[20] This evidence that the district court relies on is suspect at best. It consists of the self-serving deposition testimony of Dickson, Conine and Hagan that the decision to terminate Salehian was supposedly made in August of 2019 although there is no documentation to corroborate this except for three emails dated in August and September of 2019, ECF No. 39-2, pgs. 24-26, which are emails between Dickson and Hagan which supposedly set out the logistics of the termination even though there are no specifics that a decision to terminate Salehian had been made or for that matter there is no mention of the word termination in any of these emails.

disabled under the ADA.

Under the Americans with Disabilities Act Amendments Act of 2008 ("ADAAA"), "[D]isability shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter." *42 U.S.C. §12102(4)(A)*. The definition of "disability" in this part shall be construed broadly in favor of expansive coverage to the maximum extent permitted by the terms of the ADA. *29 C.F.R. §1630.1 (c)(4)*.

Further, "[T]he term "substantially limits" shall be interpreted consistently with the findings and purposes of the ADA Amendments Act of 2008." *42 U.S.C. §12102(4)(b)*.

Applying the ADAAA, Salehian was clearly disabled under the ADA as set forth below.

Under the ADA "disability" means, with respect to an individual: (a) a physical or mental impairment that substantially limits one or more major life activities; (b) a record of such an impairment; or (c) regarded as having such an impairment. *42 USC §12102(2); 29 CFR §1630.2(g)*; EEOC Compliance Manual §902.1.

Here "[i]n the fall of 2019 Salehian was seen by Kristen Addis Brown, M.D. at Thomas Dermatology to treat four skin cancer lesions. In early October 2019 she began a topical chemotherapy treatment drug for the cancer. [ER pgs. 59, 71-72, Salehian Aff. ¶53, Ex. 3.] Further on October 8, 2019 in a meeting with Treasurer Conine, Chief of Staff Dickson and Yeatts, Salehian was approved to work from home because of the scabbing and pain on her face from the treatment. [ER pgs. 59, Salehian Aff. ¶54.]

Thus Appellant had a physical impairment (ie. four skin cancer lesions that required a topical chemotherapy treatment drug) and the physical impairment substantially limited Salehian "in performing major life activities, including but not

limited to working."

Further as to the major life activity of working, which is a enumerated major life under the ADAAA[21], Plaintiff has set forth specific evidence that she needed time off on an intermittent because of her physical impairment, "[O]n October 17th, 2019 Salehian was again treated by Dr. Brown, who filled out FMLA paper work for intermittent FMLA leave for continued intermittent treatment that would be administered on an ongoing basis to treat Plaintiff's condition." [ER pgs. 59-60, 73-77, Salehian Aff. ¶56, Ex. 4.]

Operation of bodily functions, including but not limited to, functions of the immune system and normal cell growth for someone with cancer are now enumerated major life activities under the ADAAA[22].

Finally there is an issue of material fact as to whether Appellees' are liable for disability discrimination under the ADA for not providing or continuing to provide accommodations to Salehian for a known disability and instead terminating Salehian on October 28, 2019.

"Once an employer becomes aware of the need for accommodation, that employer has a mandatory obligation under the ADA to engage in an interactive process with the employee to identify and implement appropriate reasonable accommodations." *Humphrey v. Memorial Hospitals Association*, 239 F.3d 1128, 1137 (9th Cir. 2001); *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 805-808 (7th Cir. 2005).

Here on October 8, 2019 Salehian made Treasurer Conine, Chief of Staff Dickson and Yeatts aware of the need to work from home because of the scabbing and pain on her face from the treatment (ie. chemotherapy), which was approved,

---

[21] See *42 U.S.C.* §12102(4)(A).

[22] See *42 U.S.C.* §12102(2)(B).

46

Plaintiff continued to update them on the need to work from home including via telephone on October 18, 2019 and with an email on October 2019 thanking everyone for allowing her to work from home and informing them she will have to undergo two more rounds of chemotherapy treatment in early November and mid-December. [ER pgs. 59-60, 78-81Salehian Aff. ¶¶54, 55, 57, 58, Ex. 5][23]

Thus because Appellees were aware of Salehian's skin cancer that reasonably was a disability under the ADA, they were required to interact with Salehian and provide reasonable accommodations under the law. Appellants are wrong that Salehian had to ask for accommodations by name under the ADA. There are multiple authorities that make clear that the "ADA" or "reasonable accommodations" don't even have to be mentioned. *See Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1171 (10th Cir. 1999)-the request need not mention the ADA or use the phrase "reasonable accommodation." A simple request for continued employment is sufficient. No specific accommodation need by requested. *See also Fjellestad v. Pizza Hut of America, Inc.*, 188 F.3d 944, 955, fn. 5-need not use "magic words" of "reasonable accommodation."

Further a request is not necessary if the employer is already aware of the disability. If the employer learns from any source that the employee has a potential disability that may require some accommodations, the employer is under a duty to initiate discussions concerning the need for an accommodation. *Taylor v. Phoenixville School District*, 184 F.3d 296, 314-315 (3rd Cir. 1999).

Thus on the facts presented *not* only did Appellees have an obligation to provide continued accommodation to Salehian's disability but they could *not*

---

[23] Both Treasurer Conine and Chief of Staff Dickson made clear that they were aware of Salehian's skin cancer and the need for treatment at their depositions. [ER pgs. 108-109, Conine Depo. 62:6-63:21; ER pgs. 120-122, 125-126; Dickson Depo. 51:14-53:17; 104:10-105:19.]

terminate Appellant because of her disability. Although Appellees claim they did *not* terminate Salehian because of her disability, it is reasonable to assume (which is supposed to be done for the non-moving party on summary judgment) that Treasury Conine and Chief of Staff Dickson were *not* happy about the prospect of Salehian missing time from work to deal with her cancer including more chemotherapy and potential missed time in early November and mid-December for further treatment.

Although the district court does not contest that Salehian's skin cancer qualifies as a disability within the meaning of the ADA[24] it finds that the Appellants did accommodate Salehian's disability by allowing her to work from home[25] and further finds as it did on Appellant's FMLA claim, that the record is void of any evidence that her skin cancer or any related accommodations played a role in her termination which it determined was decided by Appellees before they even knew about Salehian's condition or a need for accommodations.[26]

On that basis the district court granted Appellees summary judgment on the ADA claim.[27]

First as to whether Appellees fulfilled their duty to provide reasonable accommodation to Salehian, that duty is a continuing duty and would *not* be fulfilled by just providing Appellant with initially accommodations in October 2019 (ie. by letting Salehian work from home), if the need for further accommodations were needed later on. *See McAlindin v. County of San Diego*, 192

---

[24] ER pg. 46, district court order, 22:20-21

[25] ER pg. 46, district court order, 22:24-26.

[26] ER pg. 47, district court order, 23:1-3.

[27] ER pg. 47, district court order, 23:8-9.

F.3d 1226, 1236 (9th Cir. 1999) – The employer's duty to provide reasonable accommodations is a continuing one and is not met by a single effort.

Further as set forth above, it is reasonable to assume that because Appellees and specifically Treasury Conine and Chief of Staff Dickson knew about Salehian's disability and need for potential continued accommodations for more chemotherapy treatment in early November and mid-December, that they terminated Salehian's employment because they were not happy with the prospect of Salehian missing more time from work.

As set forth above with respect to Salehian's FMLA claim, by improperly weighing the evidence and reaching factual inferences contrary to Salehian's competent evidence, the district court neglected to adhere to the fundamental principle that at the summary judgment stage, reasonable inferences should be drawn in favor of the nonmoving party." *Tolan*, 572 U.S. at 660.

Thus the district court's grant summary judgment as to Appellant's ADA claim should be overturned so the claim can be presented to a jury at trial.

## VIII.

## CONCLUSION

It is clear that the district court had one objective in mind when it decided Appellees' motion for summary judgment and that was to decide the motion in their favor no matter what the evidence was.

Employees should have the same rights as employers but unfortunate in the District of Nevada, judges view motions for summary judgment and motions to dismiss as the preferred method of disposing of case and instead of looking at the evidence and facts plead in the light most favorable and making all reasonable inferences in favor of the non-moving party employee, the evidence and facts plead are actually looked at in the light most favorable and reasonable inferences are made in favor of the moving party employer or individual defendant.

This accounts for the high percentage of cases in which motions for summary judgment and motions to dismiss are granted in the District of Nevada and the almost non-existent amount of cases that go to trial these days in the District of Nevada.

As set forth above, the district court credited the evidence of Appellees the moving parties seeking summary judgment and failed to credit Salehian's evidence properly and by doing so was *not* accepting Salehian's evidence and making all reasonable inferences on that evidence.

And by doing so the district court was impermissively weighing the evidence, making judgment on what evidence was credibly, relevant, compelling, etc., all of which are the job of the jury *not* the judge.

Thus it is incumbent on the Court of Appeals to overturn the district court's grant of summary judgment for Appellees with instructions that the case to proceed forward to a trial on its merits. As set forth above, Salehian does not wish to appeal her claim for sex/gender discrimination.

DATED: 02/28/2024                LAW OFFICES OF MICHAEL P. BALABAN


                                 BY: /s/ Michael P. Balaban
                                 Michael P. Balaban
                                 LAW OFFICES OF MICHAEL P. BALABAN
                                 10726 Del Rudini Street
                                 Las Vegas, NV  89141

50

Case: 23-3384, 02/29/2024, DktEntry: 9.1, Page 60 of 60

## STATEMENT OF RELATED CASES

Appellant is aware of no related cases pending before this court.

## CERTIFICATE OF COMPLIANCE

Pursuant to F.R.A.P. 32(a)(7)(B)(i) and Circuit Rule 32-1, I certify that this Brief of Appellants is proportionately spaced, has a typeface of 14 points and contains 13,905 words.

## CERTIFICATE OF SERVICE

I hereby certify that pursuant to Circuit Rule 25-5(f) a true and correct copy of the foregoing document was electronically served via the Appellate ECF system to the following persons:

Cameron Parks Vandenberg, Esq.
*Attorneys for Appellees*

DATED: 02/28/2024                    /s/ Michael P. Balaban
                                     Michael P. Balaban