No. 23-3384

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

SHEILA SALEHIAN,

*Plaintiff - Appellant,*

v.

STATE OF NEVADA, NEVADA STATE TREASURER'S OFFICE;
ZACH CONINE, STATE TREASURER,

*Defendants - Appellees,*

On Appeal from the United States District Court
for the District of Nevada
No. 2:21-cv-01512-CDS-NJK
Hon. Cristina D. Silva

**APPELLEES' ANSWERING BRIEF**

AARON D. FORD (Bar No. 7704)
Attorney General
CAMERON P. VANDENBERG (Bar No. 4356)
Chief Deputy Attorney General
ALINA KRAUFF (Bar No. 16266)
Deputy Attorney General
Office of the Nevada Attorney General
555 E. Washington Ave., Ste. 3900
Las Vegas, NV 89101
(702) 486-3420 (phone)
(702) 486-3773 (fax)

*Attorneys for Defendants-Appellees*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................... iv

INTRODUCTION ................................................................................... 1

COUNTER-STATEMENT OF ISSUES PRESENTED ........................... 3

STATEMENT OF FACTS ........................................................................ 4

I. Factual Background ........................................................................... 4

   A.  Salehian's Employment at the Treasurer's Office ....................... 4

   B.  Salehian's Performance Under Treasurer Conine's Administration ............. 6

   C.  Salehian's Termination Due to Unsatisfactory Performance ......................... 8

PROCEDURAL HISTORY ...................................................................... 9

STANDARD OF REVIEW ...................................................................... 10

   A.  Summary Judgment ................................................................... 10

SUMMARY OF THE ARGUMENT ....................................................... 11

   A.  Appellees Were Entitled to Summary Judgment on Salehian's Age Discrimination Claim Because Salehian Failed to Raise a Genuine Issue of Fact Regarding Appellees' Motive for Termination ................................... 12

      1.  The District Court Found Salehian Established a Prima Facie Case of Age Discrimination Under McDonnell ................................................. 14

      2.  Appellees Articulated a Legitimate, Nondiscriminatory Reason for Terminating Salehian's Employment ................................................. 17

      3.  Salehian Failed to Raise a Triable Issue of Pretext Sufficient to Defeat Summary Judgment .............................................................................. 17

         a.  Appellees' lack of prior discipline of Salehian is consistent with State business practices regarding management of unclassified State employees. ........................................................................................ 19

i

b.   Statistical evidence of subsequent personnel decisions within the Treasurer's Office presented in Salehian's MSJ opposition is inadmissible because the affiants lack personal knowledge of the ages of hired or promoted younger individuals or of the applicants not selected...................21

c.   There is no evidence that younger employees who Salehian alleges were treated more favorably were similarly situated. ...........................................23

d.   Five Out of Six of Mr. Dickson's Alleged Discriminatory Comments Were Passing, Ambiguous Remarks Not Directed at Salehian....................24

e.   Salehian's Subjective Opinion of Her Competence Is Insufficient to Create a Genuine Issue of Pretext...................................................................25

f.   Affidavits by Salehian's Former Supervisors and Coworkers As to her Performance Are Not Germane to the Relevant Time Period and Appellees' Perception of Salehian's Performance...........................................................26

g.   Salehian's Resistance to Cooperating with New Leadership Was Noted by the Previous Treasurer's Administration..................................................27

h.   Appellees' Stated Reason for Terminating Salehian Was Not Inconsistent ...................................................................................................27

B.   The District Court Properly Granted Summary Judgment on Salehian's Hostile Work Environment Claim Because Salehian Failed to Raise a Genuine Issue of Fact that the Alleged Conduct She Was Subjected to Was Sufficiently Severe or Pervasive ...................................................................................................29

1.   Faragher-Ellerth Defense...............................................................................32

D.   The District Court Properly Granted Summary Judgment on Salehian's FMLA Interference Claim Because Salehian Failed to Raise a Genuine Issue of Fact that her Termination was Motivated in Any Way by Her Intent to take FMLA Leave ...................................................................................................35

E.   The District Court Properly Granted Summary Judgment on Salehian's ADA Failure to Accommodate Claim Because Salehian Failed to Raise a Genuine Issue of Fact that She Requested and Was Denied a Reasonable Accommodation, or that She Was Terminated Because of Her Disability..........38

CONCLUSION ...................................................................................................44

ii

STATEMENT OF RELATED CASES ................................................................45

CERTIFICATE OF COMPLIANCE ...........................................................46

CERTIFICATE OF SERVICE ...............................................................47

## TABLE OF AUTHORITIES

**Page**

<u>Cases</u>

*Aguirre v. California*, 842 Fed. Appx. 91, 93 (9th Cir. 2021)................................35

*Allen v. Pac. Bell*, 348 F.3d 1113, 1114 (9th Cir. 2003) ........................................40

*Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986)...................................11

*Aragon v. Republic Silver State Disposal Inc*., 292 F.3d 654,
 663 (9th Cir.2002) ..................................................................... 22, 23

*Burdine*, 450 U.S. 248, 256.....................................................................18

*Campbell v. Hawaii Dep't of Educ.*, 892 F.3d 1005, 1016 (9th Cir. 2018)...... 30, 34

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)..................................................11

*Chuang*, 225 F.3d at 1124.....................................................................18

*Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1281 (9th Cir. 2000)............... 15, 22

*Coons*, 383 F.3d at 885 .....................................................................44

*Coszalter v. City of Salem*, 320 F.3d 968, 977-78 (9th Cir. 2003) .........................37

*Craig v. M & O Agencies, Inc.*, 496 F.3d 1047, 1057 (9th Cir. 2007) ...................33

*Curley v. City of N. Las Vegas*, 772 F.3d 629, 633 (9th Cir. 2014) .......................17

*Dep't of Fair Employment & Housing v. Lucent Techs., Inc*., 642 F.3d 728, 746
 (9th Cir. 2011) .....................................................................28

iv

*Diaz v. Eagle Produce Ltd. Partnership*, 521 F.3d 1201, 1209 (9th Cir. 2008) .....22

*DiDiana v. Parball Corp.*, 472 F. App'x 680, 681 (9th Cir. 2012) ........................12

*Dominguez-Curry v. Nevada Transp. Dep't*, 424 F.3d 1027,
1037 (9th Cir. 2005) ...........................................................................12

*EEOC v. Republic Servs., Inc.*, 640 F. Supp. 2d 1267 (D. Nev. 2009) ..................28

*Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998).............................. 30, 32

*Folkens v. Wyland Worldwide, LLC*, 882 F.3d 768, 773 (9th Cir. 2018)...............10

*Fried v. Wynn Las Vegas, LLC*, 18 F.4th 643, 647 (9th Cir. 2021).................. 29, 30

*Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1222 (9th Cir.1998) .......................18

*Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176-78 (2009) ..................................12

*Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1155 (9th Cir. 2010).............. 16, 17

*Holly D. v. California Inst. of Tech.*, 339 F.3d 1158, 1178 (9th Cir. 2003)............33

*Humphrey v. Meml. Hosps. Ass'n*, 239 F.3d 1128, 1138 (9th Cir. 2001)...............41

*Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303, 1309 (10th Cir. 2005) .............18

*Law v. Kinross Gold U.S.A., Inc.*, 651 Fed. App'x 645, 648 (9th Cir. 2016) ........37

*Lindahl v. Air France*, 930 F.2d 1434, 1437 (9th Cir. 1991) ..................................16

*Lucent*, 642 F.3d at 746..........................................................................................29

*Manatt v. Bank of America*, 339 F.3d at 792, 795–99 ...............................................32

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) ................. 14, 15, 16, 42

*McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1122 (9th Cir. 2004)......... 14, 18, 20

*Merrick v. Farmers Ins. Group*, 892 F.2d 1434, 1438 (9th Cir. 1990) ..................20

*Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006)..................10

*Montero v. AGCO Corp.*, 192 F.3d 856, 862 (9th Cir. 1999) ................................33

*Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081 (9th Cir. 1996) ..........................10

*Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 919 (9th Cir. 1996)..................25

*O'Brien v. R.C. Willey Home Furnishings*, 748 Fed. Appx. 721,
 723 (9th Cir. 2018) .................................................................................42

*Opara v. Yellen*, 57 F.4th 709, 721-722 (9th Cir. 2023).........................................14

*Palmer v. United States*, 794 F.2d 534, 539 (9th Cir. 1986) ..................................22

*Pollard v. White*, 119 F.3d 1430, 1433 (9th Cir. 1997)..........................................11

*Pottenger v. Potlatch Corp.*, 329 F3d 740, 747 (9th Cir. 2003)..............................25

*Ramirez v. Kingman*, 374 F. Supp. 3d 832, 852 (D. Ariz. 2019) .................... 20, 28

*Ravel v. Hewlett-Packard Enterprise, Inc.,* 228 F. Supp. 1086,
 1092 (E.D. Calif. 2017) .........................................................................44

*Ray v. Henderson*, 217 F.3d 1234, 1245 (9th Cir. 2000)........................................30

*Reeves v. Sanderson Plumbing Products, Inc*., 530 U.S. 133,
148 (2000) .............................................................................. 14, 16, 18

*Samper v. Providence St. Vincent Med. Ctr*., 675 F.3d 1233,
1237 (9th Cir. 2012) .............................................................................40

*Sanders v. City of Newport*, 657 F.3d 772, 778 (9th Cir. 2011) .............................35

*Schnidrig v. Columbia Mach., Inc.*, 80 F.3d 1406, 1409 (9th Cir. 1996)................14

*Schuler v. Chronicle Broad. Co., Inc*., 793 F.2d 1010, 1011 (9th Cir. 1986) .........26

*Sengupta v. Morrison–Knudsen Co., Inc.*, 804 F.2d 1072, 1075 (9th Cir.1986) ....21

*St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993)......................................12

*Taylor v. Phoenixville Sch. Dist*., 184 F.3d 296, 313 (3d Cir.1999) .......................41

*Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981) ..............14

*Vasquez v. County of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003)............ 23, 32

*Villiarimo v. Aloha Island Air, Inc*., 281 F.3d 1054,
1062 (9th Cir. 2002) .............................................................................. 15, 16, 18

*Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir.1994) ............................ 15, 16

W*ilmarth v. City of Santa Rosa*, 945 F. Supp. 1271, 1276 (N.D. Cal. 1996) .........44

*Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002) ....................40

vii

**Statutes**

29 U.S.C. § 2615(a)(1) ............................................................... 35

NRS 284.383-284.405 ................................................................. 19

**Rules**

FRCP 56(c)(4) ............................................................................ 21

**Regulations**

29 C.F.R. § 1630.2(o)(1) ........................................................... 40

29 C.F.R. § 825.220(b) .............................................................. 35

**Codes**

42 U.S.C. § 12112(b)(5)(A) ...................................................... 40

NAC 284.638-284.6563 .......................................................... 5, 19

# INTRODUCTION

Appellant Sheila Salehian is a former employee of the Nevada Treasurer's Office ("NTO"), who was terminated from her unclassified, at-will position on October 28, 2019, solely because of poor work performance, inability to get along with co-workers, and her unwillingness to adapt to changes and focus on and prioritize programs important to the Office after Treasurer Zach Conine took office in January 2019.

In late January 2019, Miles Dickson, Treasurer Conine's newly appointed Chief of Staff, began the process of implementing Treasurer Conine's policy initiatives. After months of interacting with Treasurer's Office deputies and ascertaining areas in need of improvement, Mr. Dickson and Treasurer Conine made numerous personnel decisions, including deciding in August 2019 to terminate Salehian. Appellees determined that Salehian's performance as Deputy Treasurer of Nevada's College Savings Division and Executive Director of the Governor Guinn Millennium Scholarship Program was not satisfactory in light of their administration's policy emphasis on public program accessibility as opposed to financial literacy.

Following the termination of her employment, Salehian filed the instant action against the Treasurer's Office and Treasurer Conine. Her Second Amended Complaint alleges the following claims: (1) age discrimination in violation of the

1

Age Discrimination in Employment Act ("ADEA"); (2) hostile environment age harassment in violation of the ADEA; (3) violation of the FMLA; (4) disability discrimination and failure to accommodate in violation of the Americans With Disabilities Act ("ADA"); and (5) sex/gender discrimination in violation of Title VII of the Civil Rights Act ("Title VII"). Appellees moved for summary judgment on all claims.

With respect to Salehian's age discrimination claim, the District court applied the familiar *McDonnell Douglas* framework and determined that Salehian had met the minimal showing necessary for a prima facie case. In response to the prima facie showing, Appellees presented evidence demonstrating that Salehian's termination was the result of her unsatisfactory performance under Treasurer Conine's tenure. The District court found that Salehian failed to meet her burden of showing that Appellees' proffered reason for termination was pretext. The District court therefore granted the Appellees' motion for summary judgment on the ADEA discrimination claim. The District court also granted Appellees' motion for summary judgment on Salehian's remaining claims.

Salehian now appeals the District court's order granting summary judgment in the Appellees' favor on all claims.

Salehian's Opening Brief to this Court misstates or ignores the factual record and asks this Court to reverse the decision of the District court granting summary

2

judgment based purely on the subjective belief and Salehian's self-serving testimony that she was the target of discrimination. Moreover, Salehian's repeated assertions that the District court drew inferences in favor of Appellees instead of her are baseless. The District court correctly applied the standards that the appellate courts have set for the evaluation of evidence in discrimination cases and appropriately declined Salehian's numerous invitations to engage in wild speculation from irrelevant or inadmissible evidence..

As more fully explained below, Appellees respectfully request that this Court affirm the District court's grant of summary judgment in favor of Appellees.

## COUNTER-STATEMENT OF ISSUES PRESENTED

1. Whether the District Court Properly Granted Summary Judgment on Salehian's Age Discrimination Claim Because Salehian Failed to Raise a Genuine Issue of Fact Regarding Appellees' Motive for Termination.

2. Whether the District Court Properly Granted Summary Judgment on Salehian's Hostile Work Environment Claim Because Salehian Failed to Raise a Genuine Issue of Fact that the Alleged Conduct She Was Subjected to Was Sufficiently Severe or Pervasive.

3. Whether the District Court Properly Granted Summary Judgment on Salehian's FMLA Interference Claim Because Salehian Failed to Raise

Genuine Issue of Fact that her Termination was Motivated in Any Way by Her Intent to take FMLA Leave.

4.    Whether the District Court Properly Granted Summary Judgment on Salehian's ADA Failure to Accommodate Claim Because Salehian Failed to Raise a Genuine Issue of Fact that She Requested and Was Denied a Reasonable Accommodation, or that She Was Terminated Because of Her Disability.

## STATEMENT OF FACTS

## I.    FACTUAL BACKGROUND

### A.    Salehian's Employment at the Treasurer's Office

Salehian was hired, at age 49, as a Senior Deputy Treasurer by former State Treasurer Kate Marshall in January 2012. SER-034-35. In May of 2015, Plaintiff was moved into the position of Executive Director of the Governor Guinn Millennium Scholarship Program, and she remained in that position until her termination. SER-035, p. 19:1-11. Salehian supervised six staff members in Carson City and Las Vegas and reported directly to a Senior Deputy Treasurer named Beth Yeatts for the last two years of Salehian's employment. *Id.* at 20:17-22, 21:1-14; SER-009. Salehian worked in the "South" office of the Treasurer's Office, and her primary duties were related to savings and scholarship programs that help Nevadans save and pay for post-secondary education, including the Governor Guinn

4

Millennium Scholarship Program; Nevada-sponsored national 529 savings plans; and the Nevada Prepaid Tuition Program. SER-006-007. All positions held by Salehian were unclassified positions and Salehian understood that her employment was at-will, meaning she could be terminated at any time without cause. SER-036-37, pp. 23:7-9, 26:17-20. As such, she was not entitled to protected job status and the notice or process provisions of Chapter 284 of the Nevada Revised Statutes ("NRS") and the Nevada Administrative Code ("NAC") before being terminated. *See* NRS 284.383-284.405 (process for discipline or dismissal of permanent *classified* employee); NAC 284.638-284.6563 (same); SER-074, p. 26:9-24. Salehian, like other unclassified employees in the Office, was appointed, sworn in by and served at the pleasure of the elected Nevada State Treasurer. SER-038, p. 30:14-25, 31:1-5; SER-072, pp. 16:19-25, 17:2-7.

In November 2018, Treasurer Conine was elected as Nevada State Treasurer. Miles Dickson was hired as the new Chief of Staff at the end of January 2019. SER-098, p. 23. Mr. Dickson supervised Salehian's direct supervisor and was responsible for the staff and two programs in the Las Vegas office of the Treasurer's Office, including the College Savings Department that Salehian worked in. SER-097, pp. 18:20-25, 19:1-15.

/ / /

/ / /

5

**B.** **Salehian's** **Performance** **Under** **Treasurer** **Conine's** **Administration.**

After Treasurer Conine was elected, he met with Salehian and Ms. Yeatts to discuss the changes he wanted to see in the College Savings Department and where the department could grow. SER-075, pp. 33:21-25, SER-076, pp. 34-36. During the Nevada State Legislative session of 2019, the Treasurer's Office significantly increased the marketing budget for College Savings and created new positions that would report to Salehian. SER-100, pp. 34:16-21. When the legislative session ended, the Treasurer's Office Executive Team, consisting of Treasurer Conine, Chief Deputy Treasurer Tara Hagan and Mr. Dickson, started discussing whether the deputies responsible for College Savings, including Salehian and Ms. Yeatts, would be able to support the significant program expansions secured during the legislative session. SER-080, p. 69:16-25, SER-081, p. 70:1-5; SER-099, pp. 33: 23-25, SER-100, pp. 34-36. By that point, Mr. Dickson had noticed Salehian's poor overall performance relative to other deputies in the Office, her reluctance to adapt to changes requested by senior management and unwillingness to focus on Treasurer Conine's priorities. SER-104, pp. 71:3-19, 73:19-25, 74:1-15. Mr. Dickson was also concerned about Salehian's inability to provide a clear strategy to move the College Savings Department in the direction it needed to go. SER-097, pp. 20-21; SER-098, pp. 22, SER-104, pp. 71:21-25, pp. 72, pp. 73:1-4. When asked to put together a strategic plan, Salehian produced a plan that was unresponsive and "absolutely

6

incoherent." SER-085, p. 99:2-11. Treasurer Conine also noticed Salehian's resistance to focus on the things he wanted to focus on and considered Salehian's work product to be scattered and suboptimal. SER-078, pp. 50:9-25, pp. 51, pp. 52:1-13, SER-085, p. 98:3-9. He also observed a "massive amount of toxicity" between employees in the North and South offices that was coming primarily from Salehian and Ms. Yeatts. SER-076, p. 35:7-12. Salehian created a toxic environment with "persistent belittling of staff" and yelling at coworkers. SER-077, pp. 48:10-16, p. 49:8-13, SER-086, p. 114:16-25. Ms. Hagan, who had worked with Salehian in the Treasurer's Office for over five years, observed that Salehian was not always professional in her interactions with coworkers and was not the best team player. SER-114, p. 34:18-25, p. 35:1-9. Employees had come to Ms. Hagan in tears because they felt badgered by Salehian. *Id.* at 35:10-25, p. 36:1-13. Ms. Hagan also noticed that Salehian had a difficult time with change that occurs when there was a change in administration, a new Treasurer and a new direction for the Office. SER-117, p. 48:22-25, p. 49:20-25. Indeed, Ms. Hagan's concerns about Salehian's performance had been discussed with former Treasurer Schwartz and resulted in a January 10, 2017, letter to Salehian that outlined those concerns. SER-114, p. 36:21-25, p. 37:1-7, SER-115, pp. 38-40; *see also* SER-005-008.

/ / /

/ / /

7

### C.    Salehian's Termination Due to Unsatisfactory Performance

During the spring of 2019, Mr. Dickson had noticed early warning signs related to Salehian's performance and reached the conclusion over the course of the summer that Salehian was not the right person to lead the program expansions in College Savings that had just been secured at the legislature. SER-100, pp. 36:15-25, p. 37, SER-101, p. 38:1-11. By the end of August 2019, the Executive Team made the decision to terminate Salehian. SER-080, pp. 69:16-25, SER-081, p. 70; SER-101, pp. 38:6-25, p. 39:1-5; SER-117, p. 63:4-22. At that point, Ms. Hagan and Mr. Dickson started working on the logistics of Salehian's termination. SER-083, pp. 84:19-25, p. 85:2-17, SER-084, p. 86:2-14. For example, Mr. Dickson sent emails to Ms. Hagan on August 16, 2019, and September 3, 2019, inquiring about Salehian's position to confirm that it was unclassified for purposes of preparing a separation agreement. SER-027-028; SER-115, pp. 66-67, p. 68:12-22, 69:6-25, SER-119, p. 70:1-16, pp. 72-73; SER-120, p. 74. In a September 19, 2019, email to Ms. Hagan, Mr. Dickson discussed Salehian's position, severance amounts and letters, as well as a tentative October 4th target date for the termination. SER-029.

Because Treasurer Conine wanted to notify Salehian of her termination in person on a Friday, and Salehian had started working from home on or about October 11, 2019, Salehian was not terminated until she returned to work in the office on October 28, 2019. SER-084, pp. 86:15-25, p. 87:1-3, p. 88:13-25, p. 89:8-17; SER-

102, p. 50:8-25, p. 51:2-13. When she was notified of her termination, Salehian was given the opportunity to voluntarily resign and receive six weeks of paid administrative leave. SER-066, pp. 196:20-25, p. 197; SER-067, pp. 198-199; *see also* SER-124. On November 12, 2019, Salehian rejected the opportunity to resign. SER-067, p. 201:1-6.

The Millennium Scholarship Program Executive Director position was filled by Dr. Tya Mathis-Coleman, who had not only a bachelor's degree but also a Master's Degree in Public Administration and a Doctorate of Public Policy. SER-136, p. 6:19-23.

## PROCEDURAL HISTORY

Salehian's original Complaint and First Amended Complaint ("FAC") contained eleven causes of action. SER-184-233. After Defendants filed a Motion to Dismiss, Salehian consented to dismissal of these claims. On August 1, 2022, the Court granted Defendants' Motion to Dismiss in part, dismissing nine of Salehian's claims with leave to amend, and leaving only Salehian's age discrimination and FMLA claims intact. SER-161-1883.

On August 16, 2022, Salehian filed an untimely Second Amended Complaint ("SAC") asserting the following five claims for relief against Defendants: (1) age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"); (2) hostile environment age harassment in violation of the ADEA; (3)

9

violation of the FMLA; (4) disability discrimination and failure to accommodate in violation of the Americans With Disabilities Act ("ADA"); and (5) sex/gender discrimination in violation of Title VII of the Civil Rights Act ("Title VII").

On September 28, 2022, Appellees filed a motion for summary judgment on all five causes of action.

## STANDARD OF REVIEW

### A.    Summary Judgment

This Court reviews the "district court's decision to grant summary judgment de novo." *Folkens v. Wyland Worldwide, LLC*, 882 F.3d 768, 773 (9th Cir. 2018). "Summary judgment is appropriate if there is no genuine dispute of material fact viewing the evidence in the light most favorable to the nonmoving party." *Id*. (quotation marks omitted). "A genuine dispute of material fact is one that could reasonably be resolved in favor of either party." *Id*. (quotation marks omitted). "A fact is material if it could affect the outcome of the suit under the governing substantive law." *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006). "The mere existence of a 'scintilla' of evidence is not enough to create a 'genuine issue of material fact' in order to preclude summary judgment." *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081 (9th Cir. 1996). "Likewise, mere allegation and speculation do not create a factual dispute for purposes of summary judgment." *Id*. at 1081-82. While the court must draw all reasonable inferences in favor of the

10

nonmoving party, summary judgment must be granted if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986) (parties bear the same substantive burden of proof as would apply at trial). This Court "may affirm on any ground supported by the record, even if it differs from the rationale of the district court." *Pollard v. White*, 119 F.3d 1430, 1433 (9th Cir. 1997).

## SUMMARY OF THE ARGUMENT

The district court properly granted Appellees' motion for summary judgment with respect to Salehian's claims of: being terminated and harassed in violation of the ADEA; having her right to take leave under the FMLA interfered with/denied; and being terminated and not accommodated for a disability under the ADA.

With respect to the alleged ADEA violations, no genuine issue of material fact exists as to whether Salehian was terminated because of her age. Salehian's proffered evidence of pretext was insufficient to survive summary judgment.

As to Salehian's harassment claim under the ADEA, the district court properly found that Salehian failed to present evidence that Appellees' alleged actions or statements were sufficiently severe or pervasive to create a hostile work environment under the law.

Finally with respect to her claims under the FMLA and the ADA, the district court properly found that Salehian did not present sufficient evidence for a reasonable jury to conclude she was terminated because, or to prevent her from, taking leave under the FMLA or ADA.

Salehian does not appeal the district court's decision granting summary judgment as to Salehian's gender discrimination claim.

## ARGUMENT

A. **Appellees Were Entitled to Summary Judgment on Salehian's Age Discrimination Claim Because Salehian Failed to Raise a Genuine Issue of Fact Regarding Appellees' Motive for Termination**

As a preliminary matter, age discrimination claims require a heightened standard and a plaintiff must show that age was the determinative factor in her termination. *DiDiana v. Parball Corp.*, 472 F. App'x 680, 681 (9th Cir. 2012) (identifying "but-for" causation standard in ADEA age discrimination cases, explaining the "high hurdle" a plaintiff must overcome, and affirming summary judgment for defendant) (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176-78 (2009)). If a defendant meets this burden, the presumption created by a plaintiff's prima facie allegations "simply drops out of the picture.' *Dominguez-Curry v. Nevada Transp. Dep't*, 424 F.3d 1027, 1037 (9th Cir. 2005) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993)). Here, the district court correctly found that – even making inferences in favor of the nonmoving party – Salehian did

12

not meet her burden of presenting any evidence that the Treasurer's Office's proffered reasons were pretext for discriminatory animus that would allow a reasonable fact-finder to find that but-for her age, she would not have been terminated.

Contrary to Salehian's assertions, the district court consistently made inferences in Salehian's favor – the District court considered and accepted as true *all* of the evidence put forth by Salehian, even when the majority of the evidence consisted of self-serving testimony and inadmissible affidavits. But the district court cannot make *unreasonable* inferences in Salehian's favor and infer discriminatory pretext on her behalf based on speculation and whimsy. Taking Salehian's theory to its natural conclusion, workplace discrimination cases must automatically proceed to trial because there will always be a genuine issue of material fact if a plaintiff belonging to a protected class is terminated, simply because discrimination *could* be at play.

While Salehian is correct that genuine questions of material fact and credibility determinations are appropriately resolved by the fact-finder, the district court here did not make those determinations. As discussed below, Salehian has "created only a weak issue ... as to whether the [Treasurer's Office's] reason[s] w[ere] untrue" against a backdrop of "abundant and uncontroverted independent evidence that no discrimination has occurred," *Reeves v. Sanderson Plumbing*

*Products, Inc.*, 530 U.S. 133, 148 (2000), and she has not carried her "ultimate burden of persua[sion]," *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

**1.    The District Court Found Salehian Established a Prima Facie Case of Age Discrimination Under *McDonnell***

For disparate-treatment claims, a plaintiff must first make out a prima facie case of her discrimination claim. The plaintiff may do so either "by using the *McDonnell Douglas* framework, or alternatively, may simply produce direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated" the employer. *Opara v. Yellen*, 57 F.4th 709, 721-722 (9th Cir. 2023) (citing *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1122 (9th Cir. 2004), (Title VII case)); *see also Schnidrig v. Columbia Mach., Inc.*, 80 F.3d 1406, 1409 (9th Cir. 1996) (applying the same principle in an ADEA case). The burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) (McDonnell Douglas) applies to claims for age discrimination under the ADEA at the summary judgment stage. *See Shelley v. Geren*, 666 F.3d 599, 607 (9th Cir. 2012) ("The McDonnell Douglas test is used on summary judgment" for ADEA claims).

In the ADEA context, the following factors give rise to a prima facie showing of age discrimination: (1) membership in a protected class (forty years old or older); (2) satisfactory job performance; (3) discharge; and (4) replacement by "substantially younger employees with equal or inferior qualifications." *Coleman v.*

14

*Quaker Oats Co.*, 232 F.3d 1271, 1281 (9th Cir. 2000). "[U]nder the McDonnell Douglas framework, '[t]he requisite degree of proof necessary to establish a prima facie case ... on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence.'" *Villiarimo v. Aloha Island Air, Inc*., 281 F.3d 1054, 1062 (9th Cir. 2002) (quoting *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir.1994)).

Neither party disputes the district court's application of the *McDonnell Douglas* framework to Salehian's age discrimination claim. Further, Appellees do not dispute the district court's finding that Salehian made the bare showing necessary to make a prima facie case under the *McDonnell Douglas* framework.

Appellees conceded in their summary judgment motion that the first and third elements of the prima facie case were met. With respect to the second element – whether Salehian was performing her job satisfactorily -- the district court found that Salehian met the minimal burden to meet this element. Specifically, the district court found that a reasonable juror could find that Salehian was performing her job satisfactorily at the time she was fired based on letters of recommendation from her time at the Nevada State Treasurer's office; recognition she received in 2020 for her role in coordinating a nationwide training conference for all State Treasurers' offices; and complimentary affidavits from a former coworker and two former supervisors at the Nevada State Treasurer's office. With respect to the fourth element

15

– whether Salehian was replaced by a substantially younger employee with equal or inferior qualifications – the district court found that Salehian met her minimal burden of raising a triable issue of fact whether Salehian's replacement hire may have been less qualified.

However, a plaintiff cannot defeat a motion for summary judgment "simply by making out a prima facie case." *Lindahl v. Air France*, 930 F.2d 1434, 1437 (9th Cir. 1991); *see also Wallis*, 26 F.3d at 890-91 (noting that summary judgment remains appropriate even though a plaintiff may have established a minimal prima facie case under *McDonnell Douglas*).

Even if Salehian can establish a prima facie case, '[t]he burden of production, but not persuasion, then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action.'" *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1155 (9th Cir. 2010) (quoting *Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1123-24 (9th Cir. 2000)); *Reeves*, 530 U.S. 133, 142-43 (2000) ("[a]lthough the intermediate evidentiary burdens shift back and forth under this framework, 'the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'"); *Villiarimo*, 281 F.3d at 1062.

/ / /

/ / /

16

2. **Appellees Articulated a Legitimate, Nondiscriminatory Reason for Terminating Salehian's Employment**

The district court correctly found that Appellees have met its burden of production: "[Appellees] have proffered testimony from the executive team that Salehian was fired for legitimate, nondiscriminatory reasons relating to Salehian's performance which includes: (1) her resistance to changes/challenges, (2) her general unwillingness to focus on the new administration's priorities, and (3) her unprofessional conduct towards co-workers. ER-030-031.

Salehian does not challenge the district court's finding that Appellees have met their burden of producing a legitimate, nondiscriminatory reason for Salehian's termination.

3. **Salehian Failed to Raise a Triable Issue of Pretext Sufficient to Defeat Summary Judgment**

If the defendant can produce a "legitimate, nondiscriminatory reason" for the action, the burden then shifts back to the plaintiff, who "must then raise a triable issue of material fact" about whether the defendant's reasons are "pretext for unlawful discrimination." *Hawn*, 615 F.3d at 1155. Where the employer has articulated multiple reasons for an adverse employment action, it is insufficient for an employee to dispute only some of these reasons - "'[a]s a general rule, an employee must proffer evidence that shows each of the employer's justifications are pretextual.'" *Curley v. City of N. Las Vegas*, 772 F.3d 629, 633 (9th Cir. 2014)

17

(quoting *Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303, 1309 (10th Cir. 2005)). The district court correctly held that Salehian failed to meet her burden of production or persuasion showing that two of Appellees' articulated reasons – Salehian's resistance to change/challenges and her unsatisfactory execution of Treasurer Connie's directives – were pretext for unlawful discrimination.

A plaintiff may show pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Chuang*, 225 F.3d at 1124 (quoting *Burdine*, 450 U.S. 248, 256). If relying on indirect circumstantial evidence to prove pretext, such evidence "must be both specific and substantial." *Villiarimo*, 281 F.3d at 1062 (citing *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1222 (9th Cir.1998)). Moreover, even under the alternative *McGinest* standard, Salehian did not carry her burden of establishing neither that the Treasurer's Office's "asserted justification[s] [were] false," *Reeves*, 530 U.S. at 148, nor that the termination was "due in part or [in] whole to discriminatory intent," *McGinest*, 360 F.3d at 1123. Here, Salehian does not argue that there is direct evidence that a discriminatory reason more likely than not motivated the Treasurer's Office. Instead, Salehian relies on various pieces of circumstantial evidence and self-serving testimony which fails to show that Appellees did not actually believe that Salehian's performance was unsatisfactory.

18

a.   Appellees' lack of prior discipline of Salehian is consistent with State business practices regarding management of unclassified State employees.

Salehian contends that the Appellees' proffered reasons for terminating her are false because she never received any "negative job performance feedback" or "written or verbal warnings," was never "put on any performance improvement plan," "never had a single complaint or grievance filed against her," and "was terminated without receiving any prior disciplinary action of any kind." ER-053, ¶¶ 8, 9, 11; ER-061, ¶ 62. But, as the district court correctly noted, Treasurer Conine and his team had no obligation to make such documentation nor provide any remedial measures prior to Salehian's termination. ER-035. As an unclassified employee, Salehian was not entitled to protected job status or the notice or process provisions of Chapter 284 of the Nevada Revised Statutes ("NRS") and the Nevada Administrative Code ("NAC") before being terminated. *See* NRS 284.383-284.405 (process for discipline or dismissal of permanent classified employee); NAC 284.638-284.6563 (same); SER-071, p. 26:9-24. Salehian, like other unclassified employees in the Office, was appointed, sworn in by and served at the pleasure of the elected Nevada State Treasurer. *See* SER-038*,* p. 30:14-25, 31:1-5; SER-072, pp. 16:19-25, 17:2-7.

The lack of written documentation of Appellees' dissatisfaction with Salehian's performance does not raise an inference of pretext. It "is not unusual" for

a supervisor not to document reasons for dissatisfaction with an employee's performance prior to litigation, and the fact "[t]hat [a manager] waited to memorialize the reasons for his decision fails to implicate the reasons themselves." *Merrick v. Farmers Ins. Group*, 892 F.2d 1434, 1438 (9th Cir. 1990). Of course, the absence of documentation of an employer's articulated reasons *can* be probative of pretext. Salehian relies heavily on *McGinest v. GTE Service Corporation*, 360 F.3d 1103 (9th Cir. 2004), where a company's failure to produce any written documentation of a supposed "hiring freeze" or the financial difficulties that allegedly necessitated the hiring freeze was unusual enough to raise a question as to whether the hiring freeze truly existed. (*Id*. at 1123); see also, *Ramirez v. Kingman*, 374 F. Supp. 3d 832, 852 (D. Ariz. 2019) (finding employer's failure to document alleged productivity issues, which was one of the asserted reasons for his termination, when considered with fact that employer gave "shifting" reasons for termination, was evidence of pretext).

In contrast, it would be unreasonable to infer pretext here because, as the district court noted, Appellees have not shifted or changed their reasons for terminating Salehian, nor are such reasons the kind for which a lack of underlying documentation would be particularly surprising. Appellees testified that they do not typically take notes of conversations. SER-081, p. 72:11-20, SER-085, p. 98:15-23; SER-119, p. 70:17-71:24. There is no evidence in the record to suggest that

Appellees typically take notes of their conversations and did not do so in this case to constitute a deviation from their business practices that would create an inference that their proffered reason for terminating Salehian was false. Additionally, where notice and progressive discipline is not required, as is the case here, documentation of misconduct, performance issues, or counseling would not be required.

        b.    Statistical evidence of subsequent personnel decisions within the Treasurer's Office presented in Salehian's MSJ opposition is inadmissible because the affiants lack personal knowledge of the ages of hired or promoted younger individuals or of the applicants not selected.

In her MSJ Opposition, Salehian attached her own affidavit testifying to a statistical pattern showing Appellees favor hiring younger people. ER-061-62. Salehian provides no foundation for any personal knowledge of the alleged ages of her former coworkers, persons who applied for job, or persons who were hired, through access to employee records or otherwise. Her apparent guesses are not admissible evidence pursuant to FRCP 56(c)(4), and her conclusory statements therefore could not be accepted as fact by the district court and were properly disregarded. ER-036.

Moreover, as the district court noted, statistical evidence based on small sample sizes is insufficient to show pretext. The utility of statistics, "depends on all the surrounding facts and circumstances." *Sengupta v. Morrison–Knudsen Co., Inc.*, 804 F.2d 1072, 1075 (9th Cir.1986). In *Sengupta*, the court declined to consider a

plaintiff's evidence that four of five employees laid off in a pool of 28 employees were African American. *Id*. It noted that "statistical evidence derived from an extremely small universe . . . has little predictive value and must be disregarded." *Id*. at 1076 (internal quotation marks omitted). *See also Aragon v. Republic Silver State Disposal Inc*., 292 F.3d 654, 663 (9th Cir.2002) ("[T]he fact that three of the four casuals singled out for lay off that night were white could constitute circumstantial evidence of discrimination demonstrating pretext.... Yet, because the sample size is so small, we decline to give it much weight"). Furthermore, to demonstrate pretext, statistics "must show a stark pattern of discrimination unexplainable on grounds other than [gender]." *Coleman*, 232 F.3d at 1283.

Here, Salehian's statistical evidence concerning a pool of alleged eleven employees is too small to constitute "substantial and specific" evidence that Appellees' proffered reasons for terminating her are pretextual. *See Diaz v. Eagle Produce Ltd. Partnership*, 521 F.3d 1201, 1209 (9th Cir. 2008) (holding that "two data sets of sixteen workers are too small to form a reliable basis for analysis"); *Palmer v. United States*, 794 F.2d 534, 539 (9th Cir. 1986) ("Plaintiff's simple proof that the age of employees declined over time is patently insufficient; he has not demonstrated any relationship between the challenged agency actions and the decline in ages with regard to the pool of employees eligible to be affected by the disputed agency actions"). Rather, statistical evidence must also "account for

possible nondiscriminatory variables, such as job performance." *Aragon*, 292 F.3d at 663. Salehian's simple observation of the younger ages of newly-hired employees, even if taken as true, is insufficient to show pretext without demonstrating the specific circumstances of each hire or promotion.

          c.    There is no evidence that younger employees who Salehian alleges were treated more favorably were similarly situated.

Salehian makes broad assertions about the favorable treatment of younger employees under Treasurer Conine, such as the assignment of larger offices to employees junior to her; a reduction in her duties, given instead to younger, newer employees; and an assertion that younger employees were chosen to accompany the Treasurer over her to public events. ER-056-57. However, to establish pretext on this basis, a plaintiff must present evidence showing not only that other employees not in her protected class were treated more favorably, but that they were similarly situated to her. *See Vasquez v. County of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003). As correctly noted by the district court, Salehian did not argue that the younger employees were similarly situated, nor offer any evidence that they had similar jobs and displayed conduct similar to herself. And, if Treasurer Conine was making an appearance or giving an interview that had nothing to do with the College Savings or Millenium Scholarship Programs, does it make sense for the director of those programs to be the one to accompany him?

23

       d.     Five Out of Six of Mr. Dickson's Alleged Discriminatory Comments Were Passing, Ambiguous Remarks Not Directed at Salehian.

Salehian identifies approximately six comments allegedly made by Mr. Dickson on what appears to be five separate occasions:

• Mr. Dickson's comment that Salehian "had been with the state forever" and seven years was longer than he had worked anywhere.

• Mr. Dickson's comment, when discussing outdated customer facing websites, that "all the deputies that were Millennials at the table and on video conference would much rather look at an appealing website than talk to a public servant" and that it was "probably an age thing."

• Mr. Dickson's comment that "it probably has been 20 years since the policies and procedures were updated" for the program that reconciled payments for a scholarship program Salehian managed and Mr. Dickson's comment that "when it was installed there were probably dot-matrix printers."

• Mr. Dickson's comments that he "would prefer to get a recorded message and then hang up," when discussing a call center phone tree Salehian had worked on, and that it must be "an age thing" since Salehian and Ms. Yeatts liked to talk to a human, and he preferred to hang up as quickly as possible.

> • Mr. Dickson's comment that the office was moving to "refresh the office and was interested [sic] in fresh faces and starting with a clean slate."

*See* ER-006-015, ¶¶ 15-16, 18-19, 23, 73.

On their face, Mr. Dickson's alleged comments about "policies and procedures that had not been updated in 20 years," the existence of "dot matrix printers," communication preferences of "Millennials at the table" and refreshing the office with "fresh faces and starting with a clean slate," were clearly not directed at Salehian, nor did they reference or disparage her age. *See Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 919 (9th Cir. 1996) (a supervisor's comment about getting rid of "old timers" insufficient to support an inference of age discrimination); *see also Pottenger v. Potlatch Corp.*, 329 F3d 740, 747 (9th Cir. 2003) ("[S]ome remarks lead to no reasonable inference of discrimination and thus no triable issue of material fact exists"). Even the one comment directed at her, that she "had been with the state forever[,]" does not refer to Salehian's age. It simply indicates, as he thereafter acknowledged, that Mr. Dickson doesn't stay anywhere for long. The fact that Salehian twisted the comment to feel offended does not create a reasonable inference of discrimination and thus, no triable issue of material fact exists.

> e. Salehian's Subjective Opinion of Her Competence Is Insufficient to Create a Genuine Issue of Pretext.

Salehian relies heavily on her own subjective opinions of her performance and

25

competence to rebut Appellees' contention that she exhibited unsatisfactory performance. *See, e.g.*, ER-053, ¶ 12 ("I was extremely knowledgeable, reliable, and esteemed by my staff and others . . ."); ER-054, ¶ 18 ("I never exhibited any unprofessional conduct towards co-workers, subordinates, or supervisors."); ER-057, ¶ 34 (" . . . despite my oversight and seven years of successful experience running the programs and all customer communications."), ¶ 38 (" . . . after almost eight years of successful employment at the Nevada State Treasurer's office."). She cites her affidavit, stating that she "was more than willing take direction and focus on administration priorities from Treasurer Conine" and that she "gave no resistance to the changes Treasurer Connie put in place once he took office[,]" ER-052, ¶ 7. Salehian's statements about her own performance are not evidentiary facts, but improper conclusions and opinion that are insufficient to defeat summary judgment. *See Schuler v. Chronicle Broad. Co., Inc*., 793 F.2d 1010, 1011 (9th Cir. 1986) (holding that a plaintiff's subjective personal beliefs of their competence alone does not defeat summary judgment).

> f.  Affidavits by Salehian's Former Supervisors and Coworkers As to her Performance Are Not Germane to the Relevant Time Period and Appellees' Perception of Salehian's Performance.

Salehian also offered affidavits from three other individuals with whom she worked at the Nevada Treasurer's Office—Yeatts (her last direct supervisor), McDowell (a former supervisor), and English (a former coworker)—contending

that, in their experience and opinion, Salehian never exhibited unprofessional conduct towards co-workers, subordinates, or supervisors. ER-150; ER-140, ¶11; *see also* ER-145, ¶10. Moreover, insofar as Yeatts' affidavit also states that she believed that Salehian was willing to switch direction based on the new Treasurer's priorities and did not resist Treasurer Conine's changes, Yeatts does not provide any information as to the basis for her belief. ER-150, ¶¶5–6. A bare-bones rebuttal of an employer's proffered reason is insufficient to create a triable issue of pretext.

> g. Salehian's Resistance to Cooperating with New Leadership Was Noted by the Previous Treasurer's Administration.

In 2017, Salehian received a detailed letter from former Treasurer Schwartz outlining performance issues to address, in particular, her difficulty adapting to new conditions. SER-005-008.

> h. Appellees' Stated Reason for Terminating Salehian Was Not Inconsistent.

Salehian also argues that Appellees changed their proffered reason for terminating Salehian because, on the day of her termination, they diplomatically stated she was being let go "because they were going in a different direction" and not the aforementioned performance issues. *See* Opening Brief 29. However, on its face, the Appellees' statement is not inconsistent with Salehian's termination for performance issues. The Treasurer's Office *was* going in a new direction in terms of the new administration's policy priorities. Appellees do not deny that they did not

27

tell Salehian they were letting her go because her performance was unsatisfactory. But Salehian's argument that Appellees' initial reason of "going in a different direction" constitutes a clear shift from Appellees' proffered reasoning in this litigation fails, contrary to the case of *Ramirez v. Kingman*. In *Ramirez*, there was a triable issue on pretext because the employer first stated in its EEOC position statement it terminated the plaintiff due to productivity issues, and subsequently added during litigation that the termination was due to productivity and attitude issues. 374 F. Supp. 3d 832, 853 (D. Ariz. 2019). Crucially, in *Ramirez*, the plaintiff's termination letter notified him he was terminated "without cause," but the "clear shift" was found only between the EEOC statement and litigation. *Id*. Ergo, *Ramirez* does not contradict the district court's finding that there is no clear shift in Appellees' proffered reasons for termination.

Even when every piece of evidence on the record is considered together, it is insufficient to prove that Appellees' stated reasons for terminating Salehian were false *and* that the real reason was unlawful discrimination. Salehian cannot simply show that the decision to terminate her was "wrong, mistaken or unwise" to establish pretext. *See Dep't of Fair Employment & Housing v. Lucent Techs., Inc*., 642 F.3d 728, 746 (9th Cir. 2011); *see also EEOC v. Republic Servs., Inc.*, 640 F. Supp. 2d 1267 (D. Nev. 2009) ("an employer's belief that the employee's performance was unsatisfactory, even if mistaken, is not grounds for inferring discrimination").

28

Instead, she "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the [] proffered legitimate reasons for her termination that a reasonable factfinder could rationally find them unworthy of credence." *Lucent*, 642 F.3d at 746. Appellees' lack of recordkeeping about their dissatisfaction with Salehian's performance does not raise the inference that their belief was false; Salehian presented no evidence that lack of written documentation is internally inconsistent or atypical. The district court correctly granted summary judgment in favor of the Appellees on Salehian's age discrimination claim. This Court should affirm.

**B.  The District Court Properly Granted Summary Judgment on Salehian's Hostile Work Environment Claim Because Salehian Failed to Raise a Genuine Issue of Fact that the Alleged Conduct She Was Subjected to Was Sufficiently Severe or Pervasive**

To prevail on her hostile work environment claim under the ADEA, Salehian was required to establish that: "(1) [she] was subjected to a hostile work environment; and (2) [the Treasurer's Office] was liable for the harassment that caused the hostile environment to exist." *Fried v. Wynn Las Vegas, LLC*, 18 F.4th 643, 647 (9th Cir. 2021).

As for the first prong of the analysis, Salehian had to prove that "(1) she was subjected to verbal or physical conduct of a harassing nature; (2) this conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment." *See*

29

*Campbell v. Hawaii Dep't of Educ.*, 892 F.3d 1005, 1016 (9th Cir. 2018). "A hostile work environment 'must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so.'" *Fried v. Wynn Las Vegas, LLC*, 18 F.4th 643, 648 (9th Cir. 2021) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998)). However, "[n]ot every insult or harassing comment will constitute a hostile work environment." *Ray v. Henderson*, 217 F.3d 1234, 1245 (9th Cir. 2000). "Properly applied, [the objective severity standard] will filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." *Faragher*, 524 U.S. at 788 (citation and internal quotation omitted). Indeed, "conduct must be extreme to amount to a change in the terms and conditions of employment." / / /

*Id*. As the district court correctly determined, Salehian failed to demonstrate that her work environment was objectively hostile.

Salehian argues that she was subjected to a hostile work environment because of the six aforementioned negative comments supposedly related to her age that Mr. Dickson allegedly made, such as her desire to talk on the phone to customers versus handle issues online in contrast with the millennials in the office; that she had been with the state "forever" and that the State was moving to a new location to refresh the office and was interested in "fresh faces" and starting with a clean slate. ER-007-

30

008. Salehian alleges in her amended complaint that she was "extremely offended and humiliated by Chief of Staff Dickson's comments which she felt were directed at her age and her ability to do her job because of her age." *Id*. No reasonable person would find these alleged statements to be insulting, hostile, abusive, harassing, or extreme. They simply recognize generational differences or preferences in the workplace.

Salehian also alleges she experienced a reduction of duties, including media outreach responsibilities that were given to younger employees; was continually asked to provide information, only to be told by Mr. Dickson that he had not had a chance to review what he asked for; and was "never allowed to pick up Treasurer Conine and accompany him to public facing meetings or functions." ER-008-009, ¶¶ 25-27.

The district court properly found that these comments "are a far cry from a targeted pattern of abusive comments directed at a plaintiff severe enough to affect her working conditions." ER-041. For one, five out of six comments were made generally. The one comment directed at her, his remark that she had "been with the State forever," is ambiguous at best. *Id*. None of the comments address Salehian's age or derision of any kind. At the very *most,* and it would be a stretch, Mr. Dickson's comments amount to nothing more than the mere offensive utterances or ordinary workplace tribulations that the objective severity standard is meant to filter out.

31

*Faragher*, 524 U.S. at 788; *Vazquez*, 349 F.3d at 642.

In the Opening Brief, Salehian contends that "[i]t is clear from the district court's analysis that whatever the evidence showed, the district court would have concluded that it was not severe of [sic] pervasive enough as a matter of law to constitute a hostile environment. It cited cases where there were only a couple incidents of harassment, not at least eleven like here." *See* Opening Brief 40. Salehian misrepresents the cases cited in the district court's Order, both of which affirm summary judgment in favor of employers in cases *involving far more egregious* conduct. *See Vasquez*, 349 F.3d at 643-44 (holding a coworker's isolated remarks, six months apart, that an employee had "a typical Hispanic macho attitude" and "should consider transferring to the field because 'Hispanics do good in the field'" were not severe enough to create a hostile work environment); *Manatt v. Bank of America*, 339 F.3d at 792, 795–99 (co-workers' use of the term "China-man," ridicule of the plaintiff's mispronunciation of English words, statement that "I've had the worst kind of trouble with your countrymen," using gestures mocking the appearance of Asians, held to be insufficient to create to hostile work environment).

### 1.   *Faragher-Ellerth* Defense

Finally, even if Salehian could establish harassment/hostile work environment claim, Appellees are entitled to the Faragher/Ellerth affirmative defense: an employer is not liable for alleged harassment provided that: (1) the harassment did

not result in a tangible employment action; (2) the employer exercised reasonable care to prevent and correct promptly any harassing behavior, and (3) the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities. *Faragher v. City of Boca Raton*, 524 U.S. 775, 807-08 (1998); *Holly D. v. California Inst. of Tech.,* 339 F.3d 1158, 1178 (9th Cir. 2003); *Craig v. M & O Agencies, Inc.*, 496 F.3d 1047, 1057 (9th Cir. 2007).

Here, the alleged harassment did not result in a tangible employment action. Salehian was terminated because of unsatisfactory performance; there is no allegation or proof of constructive termination due to harassment. Further, the maintenance of an anti-harassment policy and reporting mechanism satisfies the employer's burden to prevent harassment under the second element. *Holly D. v. California Inst. of Tech.*, 339 F.3d 1158, 1177 (9th Cir. 2003) (an employer's promulgation of a written policy satisfied the employer's obligation to prevent harassment); *Craig v. M & O Agencies, Inc.*, 496 F.3d 1047, 1057 (9th Cir. 2007); *Montero v. AGCO Corp.*, 192 F.3d 856, 862 (9th Cir. 1999).

The Treasurer's Office has a zero-tolerance nondiscrimination policy. SER-016. The policy directs employees of the Treasurer's Office to comply with the Governor's Policy Against Sexual Harassment and Discrimination ("Governor's Policy"). SER-014. Both the Treasurer's Office Employee Policy Manual and the Governor's Policy outline the internal procedures for reporting incidents of

harassment or discrimination. *Id*.; *see also* SER-023. For instance, employees can file a complaint on NEATS (the Nevada Employee and Timekeeping System) or complete a Sexual Harassment or Discrimination Complaint Form located on the State of Nevada's Division of Human Resource Management ("DHRM") website. *Id*. Employees can also report harassment or discrimination by calling DHRM's Harassment/Discrimination toll-free hotline. *Id*. Salehian acknowledged receiving and understanding the Governor's Policy at the beginning of her employment, and she attended mandatory harassment and discrimination prevention training courses during her employment. SER-055, pp. 134:20-25; SER-056, p. 138:17-25; *see also* SER-026. Plaintiff did not take advantage of the available internal policies and procedures by filing a formal complaint during her employment. SER-058, p. 151:12-18. Moreover, Plaintiff never told Mr. Dickson that she believed his comments or conduct reflected an age bias and she did not ask Mr. Dickson to stop making the comments. SER-057, p. 144:12-14; SER-106, p. 81:3-7.

The district court properly granted summary judgment on Salehian's hostile work environment claim. Even if the alleged conduct is true, Salehian failed to establish that, because of her age, "she was subjected to unwelcome conduct that was sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Campbell*, 892 F.3d at 1016. Accordingly,

/ / /

34

this Court should affirm the district court's grant of summary judgment on Salehian's hostile work environment claim under the ADEA.

**D. The District Court Properly Granted Summary Judgment on Salehian's FMLA Interference Claim Because Salehian Failed to Raise a Genuine Issue of Fact that her Termination was Motivated in Any Way by Her Intent to take FMLA Leave**

Under the FMLA, it is "unlawful for any employer to interfere with…any right provided" for in the statute, 29 U.S.C. § 2615(a)(1), or implementing regulations, 29 C.F.R. § 825.220(b). *Aguirre v. California*, 842 Fed. Appx. 91, 93 (9th Cir. 2021). To make out a prima facie case of FMLA interference, an employee must establish that "(1) [they] were eligible for the FMLA's protections, (2) [their] employer was covered by the FMLA, (3) [they] were entitled to leave under the FMLA, (4) [they] provided sufficient notice of [their] intent to take leave, and (5) [their] employer denied [them] FMLA benefits to which [they] were entitled." *Sanders v. City of Newport*, 657 F.3d 772, 778 (9th Cir. 2011) (internal quotations omitted).

On or about October 8, 2019, Salehian made Appellees aware that she was being treated for various skin cancers with a topical chemotherapy treatment and requested, and was approved, to work from home because of redness and "scabbing" on her face. SER-060, pp. 166-167, 168:1-11. She never communicated any concerns or needs related to this treatment other than the temporary remote work. Salehian sent an email to Treasurer Conine, Mr. Dickson and Ms. Yeatts on October

35

22, 2019, to thank them "for allowing [her] to work from home for the past 7 days" and to let them know that she planned to "be back in the office physically on Monday [October 28, 2019]." *Id.*, pp. 168:20-25, p. 169:1-17; *see also* SER-129-132. Salehian said nothing in her October 22, 2019, email about needing or requesting time off for her medical condition and stated that working remotely had allowed her to "take all calls, meetings, handle staff needs, emails, etc. as if [she] were in the office." SER-130.

When she remotely attended a meeting with Appellees on October 18, 2019, she informed Appellees about the status of her treatment but at no time did she indicate any need for leave. ER-060, ¶57.

Again, in an October 22, 2019, email in which she thanked Treasurer Conine, Mr. Dickson and Ms. Yeats for allowing her to work from home, Salehian said nothing about a need for intermittent leave. SER-129-132. In addition, Salehian concedes she never requested FMLA leave. SER-061, pp 171:21-25, p. 172:1.

Even assuming, *arguendo,* that Appellees were sufficiently on notice of Salehian's potential need to take FMLA leave, the district court correctly determined Salehian presented no genuine issue of material fact that Appellees took adverse action against her for seeking or taking FMLA leave. "To demonstrate interference, the plaintiff must show by a preponderance of the evidence that [her] taking of FMLA leave was a 'negative factor' in [the] employer's decision to deny [her]

FMLA leave or take an adverse employment action against [her]." *Shelton v. Boeing Co.,* 702 Fed. Appx. 567, 568 (9th Cir. 2017). In the Opening Brief, Salehian cites absolutely no case authority to support her argument that ". . . given that the district court concluded that Salehian provided sufficient notice of her intent to take FMLA and then right after that she was terminated, it is reasonable to make the circumstantial inference on the evidence that Appellees terminated Salehian because they were on reasonable notice of her potential for FMLA leave rights and didn't want to grant her leave so they terminated her instead." *See* Opening Brief 52.

It is *not reasonable* to infer that based solely on temporal proximity, Salehian's unrequested FMLA leave was a motivating factor in her termination. Rather, that temporal proximity should be considered in light of the "surrounding circumstances." *Coszalter v. City of Salem*, 320 F.3d 968, 977-78 (9th Cir. 2003) ("length of time, considered without regard to its factual setting, is not enough by itself to justify a grant of summary judgment").

The district court correctly found that the decision to terminate Salehian was in progress by August of 2019, well before any time they could reasonably have been deemed to be on notice of her potential need for FMLA-leave in October. ER-045; *see Law v. Kinross Gold U.S.A., Inc*., 651 Fed. App'x 645, 648 (9th Cir. 2016) (affirming summary judgment on the plaintiff's FMLA interference claim where the evidence showed the defendant had set the plaintiff's discharge in motion months

before the plaintiff's unanticipated hospitalization and need for leave). In the Opening Brief, Salehian also asserts that the district court "was clearly making reasonable inferences on the evidence for Appellees, the moving party" because it relied on evidence Salehian now deems "suspect." The evidence in question – the August 2019 emails between Dickson and Hagan discussing the logistics of Salehian's termination and separation agreement – were attached as an exhibit to Appellees' MSJ in support of their argument that Salehian's FMLA interference claim should be dismissed. SER-027-029. If Salehian is arguing in good faith that the emails do not refer to Salehian's termination, Salehian curiously did not contest this evidence in the Opposition to MSJ. It is evident that Salehian relies on pure speculation and fantasy in lieu of pointing to any evidence that would raise a genuine issue of material fact such that a reasonable jury could find that Salehian's FMLA-protected leave was a negative factor in her termination. Accordingly, this Court should affirm the district court's grant of summary judgment on Salehian's FMLA interference claim.

**E.    The District Court Properly Granted Summary Judgment on Salehian's ADA Failure to Accommodate Claim Because Salehian Failed to Raise a Genuine Issue of Fact that She Requested and Was Denied a Reasonable Accommodation, or that She Was Terminated Because of Her Disability**

Salehian claims that Appellees failed to provide reasonable accommodation of her disability and allegedly terminated her because "they were not happy with the prospect of Salehian missing more time from work," in violation of the ADA. *See*

38

Opening Brief 49. As a preliminary matter, although Salehian's SAC contains a cause of action for failure to accommodate under the ADA, it appears that the gravamen of the claim is ADA retaliation based on Salehian's termination – Salehian never at any point identified an accommodation Salehian requested which was denied as to constitute a failure to accommodate claim. The same was noted by the district court. And there is no evidence that Salehian missed time from work that would lead to an inference that Appellees didn't want her to miss more. Therefore, the district court properly granted summary judgment in favor of Appellees on Salehian's failure to accommodate claim under the ADA. Moreover, summary judgment was proper even if Salehian's ADA is to be construed as a retaliation/wrongful termination discrimination claim – as the district court found after considering all the evidence on the record. Like Salehian's FMLA claim, undisputed evidence showed that the decision to terminate Salehian was initiated in August 2019 – well before Appellees were notified of Salehian's potential disability. In the absence of any evidence to show causation between Salehian's disability and her termination, Salehian cannot rely solely on temporal proximity between Appellees becoming aware of a potential disability and termination to defeat summary judgment.

"To establish a prima facie case for failure to accommodate under the ADA, [a plaintiff] must show that '(1) he is disabled within the meaning of the ADA; (2)

39

he is a qualified individual able to perform the essential functions of the job with reasonable accommodation; and (3) he suffered an adverse employment action because of [her] disability." *Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1237 (9th Cir. 2012) (quoting *Allen v. Pac. Bell*, 348 F.3d 1113, 1114 (9th Cir. 2003). "An employer discriminates against a qualified individual with a disability by 'not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an ... employee.'" *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002) (quoting 42 U.S.C. § 12112(b)(5)(A)) (emphasis added). A reasonable accommodation is defined as "modifications or adjustments ... that enable an individual with a disability who is qualified to perform the essential functions of that position" or "to enjoy equal benefits and privileges of employment as are enjoyed by its other similarly situated employees without disabilities." 29 C.F.R. § 1630.2(o)(1) (emphasis added). Thus, an employer may face liability under a failure to accommodate theory where an employee needs a reasonable accommodation to perform the essential functions of his job or to enjoy equal privileges of employment, and the employer fails to provide the accommodation. *Id*.

An employer's duty to engage in the ADA "interactive process" is triggered by an employee first notifying their employer of the need for an accommodation. *Id.* at 433. An employee "must make clear that the employee wants assistance for his or

her disability." *Taylor v. Phoenixville Sch. Dist*., 184 F.3d 296, 313 (3d Cir.1999). Further, "the employer must know of both the disability and the employee's desire for accommodations for that disability." *Id.*

Here, Salehian requested only one "accommodation" – the ability to work from home temporarily. It is undisputed that Appellees granted that accommodation. Salehian now contends that Appellees failed to accommodate her because they had a continuous obligation to continue the interactive process even after the initial request. While it is true that "the duty to accommodate is a continuing duty that is not exhausted by one effort." *Humphrey v. Meml. Hosps. Ass'n*, 239 F.3d 1128, 1138 (9th Cir. 2001), it is not unlimited. It is unclear how Salehian defines a continuous obligation; if Salehian is arguing that Appellees had a duty to read her mind and preemptively offer accommodations without even being notified that the initial accommodation was not sufficient – that interpretation contradicts both case authority and common sense. "[T]he employer's obligation to engage in the interactive process . . . continues when the employee asks for a different accommodation or where the employer is aware that the initial accommodation is failing and further accommodation is needed." *Id*.

Here, it is undisputed that Salehian's accommodation of teleworking was granted and Salehian never communicated that it was not working, that she was having difficulties, or that she needed anything additional at all. SER-129-132. Even

41

making all reasonable inferences in Salehian's favor – that her completed FMLA paperwork served as notice that she may need to take medical leave – it is undisputed that Salehian did not bring the completed FMLA paperwork requesting intermittent leave to Appellees until the meeting when she was terminated. SER-038, p. 32:8-15. There is no other evidence that Appellees had notice of any need for other accommodation before the termination itself; it is logically impossible that Salehian was terminated by Appellees out of their desire to avoid accommodating any potential future leave.

Even if Salehian's claim is to be construed as an ADA retaliation claim, it still fails. Under McDonnell Douglas, a plaintiff must first make a prima facie showing that he (1) he was a member of a protected class (here, disabled); (2) is qualified to perform his job; and (3) he suffered an adverse employment action because of his disability. *O'Brien v. R.C. Willey Home Furnishings*, 748 Fed. Appx. 721, 723 (9th Cir. 2018) (citing *McDonnell Douglas*). If a plaintiff is able to make a prima facie showing, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse action. *Id.* After the employer articulates its reason, the burden shifts back to the plaintiff to raise a triable issue of material fact as to whether the employer's proffered reason is a mere pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 803.

42

The district court found that Salehian offers no evidence that she was terminated because of her disability when considering the evidence that Salehian's termination decision was initiated in August 2019, as corroborated by Appellees' emails regarding the logistics of termination. Again, Salehian offered no evidence to rebut the fact that the termination decision was not initiated in August to create a genuine issue of fact as to defeat summary judgment.

Moreover, Salehian must still show that Appellees' proffered reason for her termination was pretext for discrimination based on a disability. Appellees terminated Salehian because they found her performance unsatisfactory. Salehian made no attempt whatsoever to show that unlawful discrimination against employees with disabilities motivated Appellees' decision to terminate her or that Appellees' proffered reason was inconsistent or unbelievable. Further, Salehian offered no evidence that she was treated differently than any similarly situated employees.

Salehian attempts to demonstrate that she has or had a disability because her skin cancer substantially limits/limited the major life activity of working. *See* Opening Brief p. 45-46. This assertion is belied by the record because Salehian was never unable to work while she was employed by the Treasurer's Office. She simply wanted to work from home while her face healed. " 'Substantially limited' means that a person is 'significantly restricted as to condition, manner or duration under which [she] can perform [the] particular major life activity as compared to ... [an]

43

average person in the general population.' *Coons*, 383 F.3d at 885. 'Temporary, non-chronic impairments of short duration, with little or no long term or permanent impact, are usually not disabilities.'" *Ravel v. Hewlett-Packard Enterprise, Inc.,* 228 F. Supp. 1086, 1092 (E.D. Calif. 2017) (quoting W*ilmarth v. City of Santa Rosa*, 945 F. Supp. 1271, 1276 (N.D. Cal. 1996)).

Salehian fails to demonstrate the district court erred in concluding, based on the evidence presented, that no genuine issue of fact exists as to whether Appellees failed to accommodate Salehian's purported disability or that her termination was because of a disability. Accordingly, the district court properly granted summary judgment on Salehian's ADA claim.

## CONCLUSION

For all of the above reasons and for the reasons set forth in the district court's order, Defendants-Appellees request that the district court's decision be affirmed.

AARON D. FORD
Attorney General


By: *Alina Krauff*
CAMERON P. VANDENBERG
(Bar No. 456)
Chief Deputy Attorney General
ALINA KRAUFF (Bar No. 16266)
Deputy Attorney General

*Attorneys for Defendants-Appellees*

44

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form17instructions.pdf

**9th Cir. Case Number(s)** __23-3384_____

The undersigned attorney or self-represented party states the following:

[ X]   I am unaware of any related cases currently pending in this court.

[  ]  I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[  ]  I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

**Signature**____*s/Alina Krauff*_____**Date**__April 29, 2024_____
*(use "s/[typed name]" to sign electronically-filed documents)*

45

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:*
*http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)**  23-3384

I am the attorney or self-represented party.

**This brief contains  10,053  words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[X ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties;
    [ ] a party or parties are filing a single brief in response to multiple briefs; or
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).


**Signature**   s/*Alina Krauff*                **Date**   April 29, 2024
*(use "*s/[typed name]*" to sign electronically-filed documents)*

46

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 15. Certificate of Service for Electronic Filing

*Instructions for this form:*
*http://www.ca9.uscourts.gov/forms/form15instructions.pdf*

**9th Cir. Case Number(s)** 23-3384

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are Registered for Electronic Filing:**
[ ] I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Service on Case Participants Who Are NOT Registered for Electronic Filing:**
[ ] I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants *(list each name and mailing/email address)*:

**Description of Document(s)** *(required for all documents)*:

**Signature** */s/ Ginny Brownell* **Date** April 29, 2024
*(use "s/[typed name]" to sign electronically-filed documents)*

47