IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

---

Docket No. 23-3384

---

SHIELA SALEHIAN

Plaintiff - Appellant

vs.

STATE OF NEVADA, NEVADA STATE TREASURER'S OFFICE; ZACH

CONINE, STATE TREASURER

Defendants - Appellees

---

On Appeal From an Order of the

United States District Court

for the District of Nevada

---

REPLY BRIEF

---

Michael P. Balaban
LAW OFFICES OF MICHAEL P. BALABAN
10726 Del Rudini Street
Las Vegas, Nevada  89141

Attorney for Appellant

# TABLE OF CONTENTS

<u>Page</u>

I.    INTRODUCTION         1

II.    ARGUMENT         2

A.    At a Minimum there is an Issue of Material Fact for Trial as to    2
Whether Appellees Reasons for Terminating Salehian were
Pretext for Age Discrimination.

    1.    Even Though Treasurer Conine and his Team were
under no Obligation to Document or Provide Salehian
with any Remedial Measures before her Termination,
does not Mean it would not be reasonable for a Jury to
Conclude that there Absence is Pretext for
Discrimination      2

    2.    The Fact that Appellees Hired Younger Workers after
Conine took over and Specifically that Salehian and
Yeatts were Replaced by Substantially Younger
Individuals is Probative of Pretext Based on Age
Discrimination      5

    3.    The Evidence reasonably shows that Salehian was
Treated Less Favorably than Similarly Situated
Younger Employees      6

    4.    When Looking at the Allegedly Age Discriminatory
Comments Dickson Made about Salehian in a Light
Most Favorable to Appellant like is Supposed to be
Done on Summary Judgment, an Issue of Material
Fact Exists for Trial on this Issue      7

    5.    Salehian Opinion and her Supervisor's Opinion on
her Competence is sufficient to Create a Genuine Issue
of Material Fact at to Pretext.  Further the Affidavits of
her Co-Workers are Probative of Pretext      9

i

6. Appellees want the Court to Consider a Letter from the Previous Treasurer's Administration that Salehian was Resistance to Cooperating with New Leadership but don't want the Court to Consider Testimony from Salehian or Yeatts on the Same Issue     10

7. There is Definitely an Issue of Material Fact for Trial on Whether Appellees Changed their Stated Reason for Terminating Salehian     10

B. Appellees have not Argued Anything that Should Change the Conclusion that at a Minimum there is an Issue of Material Fact for Trial as to Whether Appellees are Liable for Creating a Hostile Environment for Salehian Because of her Age in Violation of the ADEA     12

C. At a Minimum there is an Issue of Material Fact for Trial as to Whether Appellees Took Adverse Action Against Salehian for Seeking or Taking Leave under the Family and Medical Leave Act     15

D. At a Minimum there is an Issue of Material Fact for Trial as to Whether Appellees Met their Duty to Reasonably Accommodate Salehian's Disability and Whether she was Discharged in Violation of the ADA     18

III. CONCLUSION     20

## TABLES OF AUTHORITIES
## FEDERAL CASES

Page

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)     6, 8

*Bachelder v. America West Airlines, Inc.*, 259
    F.3d 1112, 1122 (9th Cir. 2001)     15

*Baker v. Silver Oak Senior Living Mgmt. Co., L.C.*,
    581 F.3d 684, 689 (8th Cir. 2009)     12

*Brown v. ScriptPro*, LLC, 700 F.3d 1222, 1229 (10th Cir, 2012)     16-17

*Corkean v. Drake Univ.*, 55 F.4th 623, 632 (8th Cir. 2022)     16

*Coszalter v. City of Salem*, 320 F.3d 968, 977-78 (9th Cir. 2003)     17

*Davis v. Team Electric Company*, 520 F.3d 1080, 1096 (9th Cir. 2008)     13

*Diaz v. AT&T*, 752 F.2d 1356, 1363 (9th Cir. 1985)     6

*EEOC v. Pape Lift, Inc.*, 115 F.3d 676, 680 (9th Cir. 1997)     11-12

*Faragher v. City of Boca Raton*, 524 U.S. 775, 807-808 (1998)     14

*Gorzynski v. JetBlue Airways Corp.*, 596
    F.3d 93, 104-105 (2nd Cir. 2010)     15

*Haun v. Ideal Industrial, Inc.*, 81 F.3d 541, 548 (5th Cir. 1996)     5

*Humphrey v. Memorial Hospitals Association*, 239 F.3d 1128,
    1139, 1140 (9th Cir. 2001)     18, 20

*Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 911-912 (2nd Cir. 1997)     5

*McGinest v. GTE Service Corp.*, 360 F.3d 1103,
    1112, 1123 (9th Cir. 2004)     5

*Pierson v. Quad/Graphics Printing Corp.*, 749 F.3d 530,
    539-541 (6th Cir. 2014)     12

*Schuler v. Chronicle Broad. Co., Inc.*, 793 F.2d 1010, 1011 (9th Cir. 1986)   9

*Steele v. Mattis*, 899 F.3d 943, 949-950 (D.C. 2018)     12

*Swinton v. Potomac Corp.*, 270 F.3d 794, 801 (9th Cir. 2001)     15

*United States v. Yazzie,* 976 F.2d 1252, 1255 (9th Cir. 1992)     5

## FEDERAL STATUTES

*29 CFR* §825.220(c)     15

## FEDERAL RULES OF EVIDENCE

Federal Rules of Evidence 701     5, 9

# I.

# INTRODUCTION

Appellees arguments in their answering brief are essentially the same arguments the district court made in its order granting Appellees' motion for summary judgment.

Further Appellees came to essentially the same conclusions the district court came to in granting summary judgment. Although it would have been nice if Appellees and their attorneys would have done some analysis and cited some facts to support their conclusions, in most cases they just stated their conclusion (like stating that Salehian was *not* similarly situated with younger employees) without any analysis once so ever.

With respect to the ADEA violations, Appellees agreed with the district that Appellant established a prima facie case of age discrimination under the ADEA but found that Salehian's proffered evidence of pretext was insufficient to survive summary judgment.

As to Salehian's harassment claim under the ADEA, Appellees agreed with the district court that Appellees actions were *not* severe or pervasive enough to create a hostile environment under the law, saying that Chief of Staff Dickson's statements to Salehian were either *not* directed at Salehian or of a general nature and did *not* reference age.

With respect to being granted leave or being accommodated under the FMLA or ADA, Appellees agreed with the district court that Salehian had *not* presented sufficient evidence for a jury to conclude that the reason she was terminated was because, or to prevent her from, taking leave under the FMLA or ADA.

Finally, like the district court, Appellees failed to credit Salehian's evidence properly and by doing so was *not* accepting Salehian's evidence and making all

reasonable inferences on that evidence for Appellant and instead was impermissively weighing the evidence, making judgment on what evidence was credibly, relevant, compelling, etc., all of which are the job of the jury at trail *not* the judge on summary judgment.

This being the case, the district court's grant of summary judgment should be reversed and the case should be remanded back to the district court with instructions to proceed to a jury trial on the merits.

## II.

## ARGUMENT

**A.    At a Minimum there is an Issue of Material Fact for Trial as to Whether Appellees Reasons for Terminating Salehian were Pretext for Age Discrimination.**

As Appellees make clear in their answering brief, they agree with the district court's finding that Salehian's established a prima facie case of age discrimination. Further there is *no* dispute that Appellees met their minimal burden of production in articulating a legitimate, non-discriminatory reason for Appellant's termination. Thus Appellees only contest the fact that there is sufficient evidence of pretext for a reasonable jury to come the conclusion Appellees terminating Appellant was a pretext for age discrimination.

**1.    Even Though Treasurer Conine and his Team were under no Obligation to Document or Provide Salehian with any Remedial Measures before her Termination, does not Mean it would not be reasonable for a Jury to Conclude that there Absence is Pretext for Discrimination.**

Appellees claim that because Salehian was a classified employee and served at the pleasure of the elected Nevada State Treasurer that Treasurer Conine and his team had no obligation to document or provide any remedial measure's prior to terminating Salehian's employment.

But as Appellees point out, "the absence of documentation of employer's articulated reasons *can* be probative of pretext." *Ans. Brief, pg. 20.*

As set forth in Appellant's opening brief, "There is not one bit of documentary evidence in this case of Appellant receiving emails about her performance or that she was being terminated because of her performance, text messages about her performance or that she was being terminated because of her performance, written warnings about her performance, being asked to sign a performance improvement plan about her performance, being suspended because her performance, etc. [ER pgs. 105-107, 110, 112, 114, 115-116, Conine Depo. 54:25-56:22; 72:11-20; 74:7-12; 98:10-23; 106:12-107:6.][1]"

Thus why would it be logical to infer that lack or any documentation of performance problems, ie., which Appellees claim was the reason Salehian was terminated, shows pretext?

Not only was there no written warnings, verbal warnings, performance improvement plans, etc. but there was no emails, text messages, correspondence or even any evidence that Salehian was talked to about the alleged performance problems which led to her termination prior to her being terminated.

And all this was brought up after the fact, after Salehian filed an EEOC charge and her subsequent lawsuit.

Further Appellees claim that "it would be unreasonable to infer pretext here because, as the district court noted, Appellees have not shifted or changed their reasons for terminating Salehian, nor are such reasons the kind for which a lack of

---

[1] The only documentary evidence of Appellant's alleged performance deficiencies were in response to interrogatories Salehian propounded in this case and in response to Salehian's EEOC charge. [See answer to interrogatory no. 1, ER pgs. 94, 96-102, Balaban Aff. ¶3, Ex. 1.]

underlying documentation would be particularly surprising." "Appellees testified that they do not typically take notes of conversations." *Ans. Brief, pg. 20.*

First of all Appellees *did* change their reasons for terminating Appellant from the reason that Conine gave Appellant when she was terminated, ie., they were "going in a different direction" when she repeatedly asked why she was being terminated [ER pgs. 60-61, Salehian Aff. ¶61], to Salehian was terminated for performance reasons, ie., specifically because she was resistance to changes/challenges, her general unwillingness to focus on the new administration's priorities, and her unprofessional conduct towards co-workers.

Just because Appellees or Appellees' attorneys say they didn't change or shift their reasons doesn't make it true. As set forth above, Salehian repeatedly asked Conine why she was being terminated and Conine responded that they were "going in a different direction".

If it was because performance reasons, Conine or Dickson could have told her that when she was terminated.

Finally even though Appellees might have testified that they do not typically take notes of conversations, the fact that there is *no* any documentation of any performance issues before Salehian was told she was terminated, is at least probative of pretext.

In fact as Appellees bring out the fact in their answering brief, former Treasurer Dan Schwartz documented alleged performance problems of Appellant when he was treasurer, ie., Salehian's difficulty adapting to new condition[2].

As set forth in Salehian opening brief, "[i]t is absolutely unfathomable that there would not be some kind of 'paper trial' made if Salehian's performance was such a problem" and is sufficient to raise a genuine factual dispute as to whether

---

[2] *Ans. Brief, pg. 27.*

the asserted reason was pretextual. *McGinest v. GTE Service Corp.*, 360 F.3d 1103, 1123 (9th Cir. 2004).

> **2.** **The Fact that Appellees Hired Younger Workers after Conine took over and Specifically that Salehian and Yeatts were Replaced by Substantially Younger Individuals is Probative of Pretext Based on Age Discrimination.**

First of all Appellees are wrong that Salehian or Yeatts opinions that the College Savings Division Treasure's office started promoting or hiring younger worker's after Conine took over as Treasurer are *not* admissible.

Both of their opinions are admissible as lay opinion testimony under FRE 701. Lay witnesses are permitted to express opinions about how old another person appears to be. *See United States v. Yazzie,* 976 F.2d 1252, 1255 (9th Cir. 1992.

Further in the age discrimination context Salehian and Yeatts can testify as to their opinions that Conine and Dickson were trying to hirer younger workers based on age comments made and actions taken by both Conine and Dickson towards them or others. *See Haun v. Ideal Industrial, Inc.*, 81 F.3d 541, 548 (5th Cir. 1996); *see also Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 911-912 (2nd Cir. 1997).

If this information was *not* accurate you would expect Appellees would have corrected the record as to Salehian and Yeatts observations that nine of the eleven positions hired or promoted in the College Savings Division since Treasurer Conine took office in January 2019 were individuals under the age of 40[3], but they didn't.

Secondly and more importantly Salehian who was 58 years old at the time of her termination, was replaced by Tya Mathis-Coleman who was 38 years old when

---

[3] ER pgs. 155-156, Yeatts Aff. ¶57; ER pg. 61, Salehian Aff. ¶65.

she replaced Salehian[4] and thus 20 years her junior[5] and Yeatts 62 years of age when she was terminated was replaced by Kirsten Van Ry, 30 years old when she replaced Yeatts and thus less than half her age. [ER pg. 155, Yeatts Aff. ¶56; ER pg. 61, Salehian Aff. ¶64; ER pgs. 133-137, Van Ry Depo. 18:25-19:3.]

Further the ages of Salehian and Yeatts' replacements are clearly documented so there is *no* need to guess at their ages.

So while Appellant is *not* arguing that statistical evidence shows that the College Savings Division started hiring or promoting younger individuals after Conine took office, Salehian and Yeatts' observations or opinions that that was occurring is admissible, and in fact with regards to their replacements, did occur. Further it is definitely probative of age discrimination in this case.

While this evidence might fall short of proving Salehian case for age discrimination by itself, it may still be relevant evidence showing that the employer's articulated reason for its employment decision is pretextual. *Diaz v. AT&T*, 752 F.2d 1356, 1363 (9th Cir. 1985).

### 3. The Evidence reasonably shows that Salehian was Treated Less Favorably than Similarly Situated Younger Employees.

The evidence Salehian has presented reasonably shows that she was treated less favorably than similarly situated younger employees.

Remember on summary judgment all the evidence is supposed to be looked at in favor and all reasonable inferences are supposed to be made for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S 242, 255 (1986).

As set forth in Appellant's opening brief, when Salehian was told by Dickson that she would be getting a smaller office than younger staff/deputies, she

---

[4] ER pg. 131, Mathis-Coleman 19:22-25

[5] ER pg. 52, Salehian Aff. ¶3

was obviously at least similarly situated with the younger staff/deputies because she says that the office assignment ran in contravention to a prior planned office move a few years earlier in which offices were going to be assigned based on staff level and seniority according to State of Nevada rules. [ER pg. 56, Salehian Aff. ¶32.]  Obviously Salehian wouldn't be complaining about this if she did *not* have more seniority than the younger staff/deputies and thus was at least similarly situated with them.

In addition Salehian was at least similarly situated with the younger newly appointed deputies under Treasurer Conine's leadership which Salehian experienced a reduction of duties including media outreach responsibilities between February 2019 and October 2019 given the younger deputies were newly appointed. [ER pg. 57, Salehian Aff. ¶33.]

Further Salehian was at least similarly situated with the younger staff, all under 40 years of age, which were allowed to pick up Treasurer Conine and accompany him to public facing meetings or functions because prior to the change, it had been a main component of Appellants job for the past 7 years. [ER pg. 57, Salehian Aff. ¶35.]

So Appellant did set forth how the younger employees were similarly situated but instead of rebutting these claims, Appellees just conclusory without any analysis once so ever, conclude that they were *not* similarly situated.

Thus at a minimum there is an issue of material fact for trial as whether to the younger employees were similarly situated and of course whether Salehian was treated less favorably than them in the ways alleged.

4.     **When Looking at the Allegedly Age Discriminatory Comments Dickson Made about Salehian in a Light Most Favorable to Appellant like is Supposed to be Done on Summary Judgment, an Issue of Material Fact Exists for Trial on this Issue.**

 As set forth in Appellant's opening brief, the comments made by Dickson

as whole along with the evidence of pretext presented, could cause a reasonable jury to rule for Appellant on the age discrimination count.

Appellees and their attorneys chose to look at the comments in the light most favorable to Appellees, *not* Salehian.

Again on summary judgment all the evidence is supposed to be looked at in favor and all reasonable inferences are supposed to be made for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S 242, 255 (1986).

First Appellees claim that Dickson's alleged comments about "policies and procedures that had not been updated in 20 years," the existence of "dot matrix printers," communication preferences of "Millennials at the table" and refreshing the office with "fresh faces and starting with a clean slate," were *not* directed at Salehian, nor did they reference or disparage her age[6], looks at these comments in a light most favorable to Appellees *not* Salehian.

After all these comments were *made in Salehian presence!* So how is it not reasonable to infer that the comments were referencing Appellant especially if the comments are looked at in a light most favorable to Salehian and all reasonable inferences are made for Salehian. Further if they are looked at in a light most favorable to Appellant, they arguably disparage her age.

Finally the comment that Salehian "had been with the state forever" does arguably refer to Appellant's age because Dickson was arguably pointing out that she had been with the state for a very long time thus indicating she was older especially when preferencing it with the statement that it "was seven years longer than he had worked anywhere."

Thus when looking at these statements in a light most favorable to Salehian and making all reasonable inferences regarding these statement in Salehian favor,

---

[6] *Ans. Brief, pg. 20.*

along with other evidence of pretext, could cause a reasonable jury to rule for Appellant on her age discrimination claim.

**5.    Salehian Opinion and her Supervisor's Opinion on her Competence is sufficient to Create a Genuine Issue of Material Fact at to Pretext.  Further the Affidavits of her Co-Workers are Probative of Pretext.**

As stated above, Salehian and her supervisor Yeatts lay opinion testimony is admissible under FRE 701.  As set forth in FRE 701, a lay witness can testify to opinions or inferences it they are (1) rationally based on the witness' perception; (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue; and (3) not based on scientific, technical or other specialized knowledge within the scope of Rule 702 (expert testimony). *FRE 701*.

Here Appellees want the court to accept that Appellant was terminated for performance reasons, i.e., Plaintiff's resistance to changes/challenges, her general unwillingness to focus on the new administration's priorities, and her unprofessional conduct towards co-workers, using the lay opinions of Conine, Dickson and others (even though there is *no* documentation to back this up), even though they say that the affidavit testimony of Salehian and Yeatts does *not* create an issue of material fact to defeat summary judgment.

Further the case they cite, *Schuler v. Chronicle Broad. Co., Inc.*, 793 F.2d 1010, 1011 (9th Cir. 1986), says that subjective personal beliefs of their competence *alone* does *not* defeat summary judgment.  Here this is *not* the only piece of evidence Salehian says create an issue of material fact regarding pretext, far from it.  Rather Appellant is claiming that this evidence along with other evidence create an issue of material fact as to pretext.

Finally Linda English's (former supervisor) and Cherie McDowell (former co-worker) are able to give their opinions that Salehian never exhibited unprofessional conduct towards co-workers, subordinates, or supervisors.  In fact

the district court even conceded that Appellant has produced enough evidence to create a triable issue of fact as to whether she displayed unprofessional conduct towards co-workers[7].

**6. Appellees want the Court to Consider a Letter from the Previous Treasurer's Administration that Salehian was Resistance to Cooperating with New Leadership but don't want the Court to Consider Testimony from Salehian or Yeatts on the Same Issue.**

Appellees want the court to consider a detailed letter from former Treasurer Dan Schwartz outlining performance issues to address, in particular, Salehian's difficulty adapting to new condition[8], but don't want the court to consider Salehian's or Yeatts affidavits on the same issue.

First as Appellees claimed previously, this is not germane to the relevant time period since Schwartz was the previous Treasurer.

Further if the Court wants to consider this letter for past performance issues had under Treasurer Schwartz, the Court should also consider that these issues were resolved and Schwartz gave Salehian a letter of recommendation. [ER pg. 53, Salehian Aff. ¶10, Ex. 1.][9]

Finally this letter also undermines Appellees assertion that Treasure's office does *not* document performance issues in writing, because if that was the case, why was did Treasurer Schwartz issue a detailed letter to Appellant on apparent performance issues.

**7. There is Definitely an Issue of Material Fact for Trial on Whether Appellees Changed their Stated Reason for Terminating Salehian.**

Appellees argument that their shift in reasons for terminating Salehian does

---

[7] ER pg. 33, district court order, 9:21-23

[8] *Ans. Brief, pg. 27.*

[9] Schwartz also later tore up the letter and said Salehian did not have to worry about it as long as she was under his leadership as Treasurer. [SER 36, Salehian's Depo. 22:9-11.]

*not* raise an issue of material fact for trial is self-serving and quite frankly ridiculous given the fact that there is absolutely *no* documentation that Appellant's job performance was a problem prior to her termination and the fact that there was a clear shift in their reasons from the Treasurer's office is "going in a different direction" to Salehian was terminated for performance reasons, specifically "because she was resistance to changes/challenges, her general unwillingness to focus on the new administration's priorities, and her unprofessional conduct towards co-workers."

As set forth in Appellees answering brief, "[t]he Treasurer's Office was going in a new direction in terms of the new administration's policy priorities"[10] is clearly a shift in reasons from after Salehian filed her EEOC charge and proceeded with the instant litigation.

This is further brought out by the fact that when Conine and Dickson told Appellant she was terminated, Salehain repeatedly asked for a reason and all Treasurer Conine told her was that the Treasurer's office is "going in a different direction" instead of Salehian's performance was bad. [ER pg. 113, Conine Depo. 94:17-20; ER pgs. 123-124, Dickson Depo. 59:2-7; 60:9-21.]

It is clear or at least reasonable to believe on the evidence presented that the reason for Salehian's termination being performance related was just developed after the fact in response to Appellant's EEOC charge and subsequent litigation.

The law is clear an employer's shifting for terminating an employee is grounds for finding pretext under the law.

*See EEOC v. Pape Lift, Inc., 115 F.3d 676, 880* (9th Cir. 1997) – Supervisor and Personnel Manager put forward two different sets of reasons for employee's termination. Employee's evidence called into question the veracity of both

---

[10] *Ans. Brief, pg. 27*

explanations. The jury was entitled to conclude that the discrepant responses proffered by Supervisor and Personnel Manager "were unsuccessful attempts to mask a statutory violation; *see also Baker v. Silver Oak Senior Living Mgmt. Co., L.C.*, 581 F.3d 684, 689 (8th Cir. 2009) – employee's supervisor offered one explanation, the CEO offered three others, and the company offered two more during the litigation; *see also Steele v. Mattis*, 899 F.3d 943, 949-950 (D.C. 2018) – inconsistencies and insufficiencies of three successive explanation by employer for termination, and the fact that employee was replaced by younger worker "could spark reasonable disbelief"; *see also Pierson v. Quad/Graphics Printing Corp.*, 749 F.3d 530, 539-541 (6th Cir. 2014) – where employer first stated employee for reduction in force because his position could be eliminated without hardship to company, then later stated termination was based on poor performance, jury could conclude employer shifted the reasons for its decision over time, which could raise an inference that proffered reasons were false and pretext for discrimination.

Thus Appellees or the district court trying to minimize the issue or saying there really wasn't a shift in reasons is *not* supported by the evidence and thus this issue should be left for the jury to decide.

**B.     Appellees have Not Argued Anything that Should Change the Conclusion that at a Minimum there is an Issue of Material Fact for Trial as to Whether Appellees are Liable for Creating a Hostile Environment for Salehian Because of her Age in Violation of the ADEA.**

Here Appellees do nothing more than summarize many of the district courts findings with regard to Salehian's claim for hostile environment and concludes like the district court did that "Salehian failed to demonstrate that her work environment was objectively hostile"[11].

---

[11] *Ans. Brief, pg. 30.*

Appellees go over again the six comments that Chief of Staff Dickson made to Appellant and conclusory concludes that "[n]o reasonable person would find these alleged statements to be insulting, hostile, abusive, harassing, or extreme", "[t]hey simply recognize generational differences or preferences in the workplace" without any analysis at all.[12]

Appellees assert that five of the six comments were general in nature and were *not* directed specially at Salehian or did they reference age. As set forth above, they were in fact made in Salehian presence, thus it is reasonable to interpret these comments as age bias comments directed at Appellant.

Appellees argue that "[a]t the very most…Mr. Dickson's comments amount to nothing more than the mere offensive utterances or ordinary workplace tribulations that the objective severity standard is meant to filter out"[13], but under the circumstances, especially when looking at the evidence in a light most favorable to Plaintiff and drawing all reasonable inferences in her favor, it hard to conclude that at a minimum an issue of material fact is not left for the jury to decide.

Further as referenced in Salehian's opening brief (and referenced in Appellees answering brief), there were *no* less than eleven incidents of harassment which occurred from March 2019 until Salehian was terminated at the end of October 2019.

Thus even if the severity or pervasiveness of abuse is questionable, "it is more appropriate to leave the assessment to the fact-finder than for the court to decide the case on summary judgment." *Davis v. Team Electric Company*, 520 F.3d 1080, 1096 (9th Cir. 2008).

---

[12] *Ans. Brief, pg. 31.*

[13] *Ans. Brief, pg. 31*

Finally Appellees assert that even if Appellant was able to establish a harassment/hostile work environment claim, the Faragher/Ellerth affirmative defense should apply to prevent liability on their behalf. *Faragher v. City of Boca Raton*, 524 U.S. 775, 807-808 (1998).[14]

As set forth in Appellant's opening brief, although Salehian did not make a formal written complaint about the harassment during her employment with Nevada State Treasurer's Office, she told her supervisor Yeatts about the harassment on numerous occasions. She also told other employees about the harassment she was experiencing including Cherie McDowell, who was a Management Analyst IV with the Nevada State Treasurer's Office and had worked for the State of Nevada for over twenty years. [ER pg. 54, Salehian Aff. ¶20; ER pg. 150, Yeatts Aff. ¶¶19-20; ER pg. 145, McDowell Aff, ¶11 .]

Further even if she had made a formal complaint before she was fired, nothing would have been done to remedy the situation because the people doing the harassing, ie. State Treasurer Zach Conine, Chief of Staff Miles Dickson and Chief Deputy Treasurer Tara Hagan were also likely the ones who would investigate Appellant's allegations. [ER pg. 54, Salehian Aff. ¶21; ER pg. 150, Yeatts Aff. ¶21.]

*See* State of Nevada, Office of the State Treasurer, Employee Policy Manual under the Governor's Policy Against Sexual Harassment and Discrimination, that once an employee files a harassment complaint through NEATS (Nevada Employee Action and Timekeeping System) the Chief of Staff (who was Dickson) and Chief Deputy Treasurer (who was Hagan) are notified that a charge of discrimination has been filed. [SER pg. 21] *See also* State of Nevada, Executive

---

[14] *Ans. Brief, pgs. 32-35.*

Branch, Sexual Harassment and Discrimination Policy, which instructs the employee to file a complaint through NEATS. [SER pgs. 22-23.]

An employee is *not* barred from claiming harassment by failing to utilize the employer's formal complaint procedures where it is shown that the person(s) designated by the employer to receive such complaints joined in the harassment. *Swinton v. Potomac Corp.*, 270 F.3d 794, 801 (9th Cir. 2001); *see also Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 104-105 (2nd Cir. 2010).

Thus here it is reasonable to conclude that Salehian was justified in *not* filing a harassment complaint through NEATS because Dickson or Hagen would likely be the ones to investigate Appellant's allegations and she might have faced retaliation, etc. had she pursued a harassment complaint through NEATS.

## C. At a Minimum there is an Issue of Material Fact for Trial as to Whether Appellees Took Adverse Action Against Salehian for Seeking or Taking Leave under the Family and Medical Leave Act.

Appellees seem to concede, as did the district court, that they were given sufficient notice of Salehian's potential need to take FMLA leave, but like the district court, they argue that it is *not reasonable* to conclude that her request for FMLA was a motivating factor in her termination.[15]

"[E]mployers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions." *Bachelder v. American West Airlines, Inc.*, 259 F.3d 1112, 1122 (9th Cir. 2001) citing *29 CFR §825.220(c)*.

As set forth in Appellant's opening brief, Salehian notified Conine, Dickson and Yeatts of four skin cancer lesions on her face and the need to work from home

---

[15] *Ans. Brief, pgs. 36-37.*

on October 8, 2019 [ER pg. 59, Salehian Aff. ¶54], notified them on October 18, 2019 that she had completed two weeks of a six week regiment of chemotherapy treatment and thus had four weeks of treatment [ER pg. 60, Salehian Aff. ¶57] and finally on October 22, 2019 thanked them for allowing her to work from home during her current chemotherapy treatment and informing them that she will have to undergo two more rounds of chemotherapy treatment in early November and mid-December. [ER pgs. 60, 78-81, Salehian Aff. ¶58, Ex. 5.]

Then on October 28, 2019, Salehian's first day back in the office, she had a scheduled meeting with Conine and Dickson, along with her Yeatts at 3:30 pm. [ER pg. 60, Salehian Aff. ¶59, Ex. 6.]

Salehian planned to turn in her completed FMLA paperwork at that meeting [ER pg. 60, Salehian Aff. ¶60], but once Salehian arrived, instead of accepting the FMLA paperwork, Treasurer Conine and Chief of Staff Dickson proceeded to inform Salehian that her employment with the Nevada State Treasurer had ended. [ER pgs. 60-61, Salehian Aff. ¶61, Ex. 7.]

Thus because Salehian was going to turn in her completed FMLA paperwork at the meeting, it is reasonable to conclude that Conine and Dickson having notice of Appellant's need for FMLA leave (from her letting them know of her skin cancer, her current chemotherapy treatment and the need for more chemotherapy treatment in early November and mid-December), that her need for FMLA was a motivating factor in the decision to terminate her.

Generally, causal connection cannot be established by temporal proximity alone between the FMLA leave and the adverse employment action. *Corkean v. Drake Univ.*, 55 F.4th 623, 632 (8th Cir. 2022). But evidence of temporal proximity plus circumstantial evidence of retaliatory motive is enough to show pretext.

*Brown v. ScriptPro*, LLC, 700 F.3d 1222, 1229 (10th Cir, 2012).[16]

Here as stated in Salehian opening brief "it is reasonable to make the circumstantial inference on the evidence that Appellees terminated Salehian because they were on reasonable notice of her potential for FMLA leave rights and didn't want to grant her leave so they terminated her instead."

While Appellees are correct in a FMLA retaliation action pretext cannot be inferred solely on temporal proximity, Salehian is *not* asking the Court to infer temporal proximity on pretext alone. In addition to temporal proximity, there is circumstantial inference or evidence in the form of Conine and Dickson being on notice that Salehian's skin cancer was something which was going to interfere with her work and cause her to continue to have go to chemotherapy treatment including in early November and mid-December. [ER pgs. 60, 78-81, Salehian Aff. ¶58, Ex. 5.]

Thus it is reasonable to conclude for summary judgment purposes that Conine and Dickson had a reasonable motivation to terminate Appellant so the workplace would not be interrupted by someone who had to continually miss work or work from home.

This being the case it is reasonable to conclude, that when looking at all the evidence in Salehian's favor and making all reasonable inferences for Salehian, that a jury could find for Appellant on her FMLA interference claim.[17]

---

[16] This is consistent with Appellees cite that, "temporal proximity should be considered in light of 'surrounding circumstances'". *Coszalter v. City of Salem*, 320 F.3d 968, 977-78 (9th Cir. 2003).

[17] Finally in response to Appellees asserting that the August 2019 emails between Dickson and Hagan discussing the logistics of Salehian's termination and separation agreement *not* being contested in her response to Appellees motion for summary judgment, the reason it was *not* mentioned in Salehian's response is because there was *no* need to. It only became needed when the district court held

**D.    At a Minimum there is an Issue of Material Fact for Trial as to Whether Appellees Met their Duty to Reasonably Accommodate Salehian's Disability and Whether she was Discharge in Violation of the ADA.**

In their answering brief, Appellees seem unclear as to whether Salehian's ADA claim is for both failure to accommodate and discharging Appellant in violation of the ADA.  In fact Salehian's claim is for both.

"Unlike a simple failure to accommodate claim, an unlawful discharge claim requires a showing that the employer terminated the employee because of his disability." *Humphrey v. Memorial Hospitals Association*, 239 F.3d 1128, 1139 (9th Cir. 2001).  "Often the two claims, are, from a practical standpoint, the same." *Id.* "For the consequence of the failure to accommodate is....frequently an unlawful termination." *Id.* "For purposes of the ADA, with few exceptions, conduct resulting from a disability is considered to be part of the disability, rather than a separate basis for termination." *Humphrey*, 239 F.3d at 1140.  "[Thus], the link between the disability and termination is particularly strong where it is the employer's failure to reasonably accommodate a known disability that leads to discharge." *Id.*

Appellees contest the fact that Appellant was disabled but the evidence set forth in her opening brief clearly show she was.

"In the fall of 2019 Salehian was seen by Kristen Addis Brown, M.D. at Thomas Dermatology to treat four skin cancer lesions.  In early October 2019 she began a topical chemotherapy treatment drug for the cancer.  [ER pgs. 59, 71-72, Salehian Aff. ¶53, Ex. 3.]  Further on October 8, 2019 in a meeting with Treasurer Conine, Chief of Staff Dickson and Yeatts, Salehian was approved to work from

---

that these email show unequivocally that Appellees were talking about terminating Salehian way back in August 2019.

home because of the scabbing and pain on her face from the treatment. [ER pgs. 59, Salehian Aff. ¶54.]

Thus Appellant had a physical impairment (ie. four skin cancer lesions that required a topical chemotherapy treatment drug) and the physical impairment substantially limited Salehian "in performing major life activities, including but not limited to working."

Appellees next question whether they accommodated Salehian and they acknowledge like is in the record that they did accommodate Appellant's skin cancer by allowing her to work from home.

On October 8, 2019 Salehian made Treasurer Conine, Chief of Staff Dickson and Yeatts aware of the need to work from home because of the scabbing and pain on her face from the treatment (ie. chemotherapy), which was approved. Plaintiff continued to update them on the need to work from home including via telephone on October 18, 2019 and with an email on October 2019 thanking everyone for allowing her to work from home and informing them she will have to undergo two more rounds of chemotherapy treatment in early November and mid-December. [ER pgs. 59-60, 78-81, Salehian Aff. ¶¶54, 55, 57, 58, Ex. 5][18]

Finally there is an issue of material fact as to whether Appellees' are liable for disability discrimination under the ADA for *not* providing or continuing to provide accommodations to Salehian for a known disability and instead

---

[18] Appellees question whether Salehian impairment was "substantially limiting" because she was still able to work but just needed to work from home. Appellees further question whether Appellant impairment was of a temporary, non-chronic nature and thus *not* a disability under the law. First just because Salehian's impairment allowed her to go to work doesn't mean it was not substantially limiting and disabled under the ADA and second, Salehian's impairment was not a "transitory and minor" impairment under the law because it was ongoing and likely to last more than six months.

terminating Salehian on October 28, 2019.

As stated above, "For purposes of the ADA, with few exceptions, conduct resulting from a disability is considered to be part of the disability, rather than a separate basis for termination." *Humphrey*, 239 F.3d at 1140. "[Thus], the link between the disability and termination is particularly strong where it is the employer's failure to reasonably accommodate a known disability that leads to discharge." *Id.*

Although Appellees claim they did *not* terminate Salehian because of her disability, as set forth above, it is reasonable to assume that because Appellees and specifically Treasury Conine and Chief of Staff Dickson knew about Salehian's disability and need for potential continued accommodations for more chemotherapy treatment in early November and mid-December, so they terminated Salehian's employment because they were not happy with the prospect of Appellant missing more time from work.

Thus when looking at all the evidence in Salehian's favor and making all reasonable inferences for Salehian, a jury could find for Appellant on her ADA accommodation and discharge claims.

### III.

### CONCLUSION

As set forth in Salehian's opening brief and as set forth above, if the rule of law on summary judgment is followed in this case, there is absolutely "no way" that summary judgment should have been granted for Appellees on the evidence presented.

Especially with respect to Appellant's claim for age discrimination as to whether the reason(s) Appellees gave for terminating Salehian's employment were pretext, it is clear that issues of material fact exist for a jury to decide.

Thus it is incumbent on the Court of Appeals to overturn the district court's

grant of summary judgment for Appellees with instructions that the case to proceed forward to a jury trial on its merits.

DATED: 06/19/2024    LAW OFFICES OF MICHAEL P. BALABAN

BY: /s/ Michael P. Balaban
Michael P. Balaban
LAW OFFICES OF MICHAEL P. BALABAN
10726 Del Rudini Street
Las Vegas, NV 89141

## STATEMENT OF RELATED CASES

Appellant is aware of no related cases pending before this court.

## CERTIFICATE OF COMPLIANCE

Pursuant to F.R.A.P. 32(a)(7)(B)(i) and Circuit Rule 32-1, I certify that this Brief of Appellants is proportionately spaced, has a typeface of 14 points and contains 5,466 words.

## CERTIFICATE OF SERVICE

I hereby certify that pursuant to Circuit Rule 25-5(f) a true and correct copy of the foregoing document was electronically served via the Appellate ECF system to the following persons:

Cameron Parks Vandenberg, Esq.
Alina Krauff, Esq.
*Attorneys for Appellees*

DATED: 06/19/2024    /s/ Michael P. Balaban
Michael P. Balaban